## FARMERS' LOAN AND TRUST COMPANY *v.* PENN PLATE GLASS COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 180.  Argued April 24, 25, 1902.—Decided June 2, 1902.

This was a suit in equity, brought by the petitioner, in the United States Circuit Court for the Western District of Pennsylvania, commenced to foreclose a mortgage given January 1, 1891, by The Pennsylvania Plate Glass Company upon its property in the county of Westmoreland and State of Pennsylvania, to The Farmers' Loan and Trust Company, to secure the payment of $250,000 of bonds then to be issued by the mortgagor company. A decree was entered by direction of the Circuit Court, providing for the foreclosure and sale of the property and for the application of the insurance moneys as prayed for. Upon appeal to the Circuit Court of Appeals the decree of the Circuit Court was reversed as to the insurance moneys; and the court below was directed to enter a decree that those moneys should be paid to the defendant, The Penn Plate Glass Company. The material facts in the case are stated in the opinion of the court. The only question involved arose from the provision made in the decree by the Circuit Court judge, impressing what is termed an equitable lien upon the insurance moneys collected on the policies taken out by The Penn Company, sufficient to pay any balance which may remain unpaid on the bonds secured by the mortgage to complainant, after the application of the proceeds of the sale of the property mortgaged. The Circuit Court held that the complainant had such equitable lien, while the Circuit Court of Appeals was of the contrary opinion. *Held* that the judgment of the Circuit Court of Appeals was right.

THIS is a suit in equity, brought by the petitioner, in the United States Circuit Court for the Western District of Pennsylvania, and the case comes here on certiorari to the Circuit Court of Appeals for the Third Circuit. The suit was commenced to foreclose a mortgage given January 1, 1891, by The Pennsylvania Plate Glass Company (hereinafter called the mortgagor company) upon its property in the county of Westmoreland and State of Pennsylvania, to complainant, The Farmers' Loan and Trust Company, a corporation of New York, to secure the payment of $250,000 of bonds then to be issued by the mortgagor company. A supplemental bill was filed, by leave of the court, which averred a loss by fire of a large portion of the premises mortgaged, and on the allegations contained in the supplemental bill the complainant asked that a decree should be entered granting to it a lien on the insurance moneys to the extent necessary to pay the bondholders the balance which might be due, after applying to their payment the proceeds of the sale of the property mortgaged. A decree was entered by direction of the Circuit Court, providing for the foreclosure and sale of the property and for the application of the insurance moneys as prayed for. Upon appeal to the Circuit Court of Appeals the decree of the Circuit Court was reversed as to the insurance moneys, and the court below was directed to enter a decree that those moneys should be paid to the defendant, The Penn Plate Glass Company, Circuit Judge Acheson dissenting. The opinion of the judge of the Circuit Court, as well as those delivered in the Circuit Court of Appeals, will be found reported in 103 Fed. Rep. 132.

The material facts in the case are as follows: The Farmers' Loan and Trust Company is a corporation of the State of New York. The defendant, The Pennsylvania Plate Glass Company (the mortgagor company), is a corporation of the State of Pennsylvania, organized for the purpose of constructing and operating plate glass works in the city of Irwin in that State. The defendant, The Penn Plate Glass Company, is also a corporation of the State of Pennsylvania, and is also organized for the purpose of constructing and operating plate glass works in the same city. The defendant William L. Kann is a citizen of the State

of Pennsylvania. On January 1, 1891, the mortgagor company executed to the complainant trust company a mortgage on its property in Westmoreland County, Pennsylvania, to secure the payment of $250,000 of bonds as therein stated. Among other things it was provided by article 1 of the mortgage that, until default should be made in the payment of the principal or interest of the bonds secured by the mortgage, or in the performance of some one or more of the covenants, stipulations or agreements required by the mortgage to be kept, performed or done by the mortgagor, it was to be permitted to possess and operate the premises and glass works with the appurtenances described in the mortgage.

By articles 2 and 3 it was provided that in case default should be made in the payment of any installment of the interest on any of the bonds or of any of the coupons accompanying the same, or in the performance of any of the covenants, agreements or stipulations contained in the mortgage and thereby required to be kept and performed by the mortgagor, and if such default continued for six months after demand made in writing, the mortgagee might take possession of the property, or foreclosure proceedings might be taken.

By article 4 the mortgagor is exempted from all personal liability for the mortgaged debt, and from the obligations of the other covenants contained in the mortgage, the article providing as follows :

"It being expressly understood and agreed by and between the parties hereto, and by and between the said party of the first part and the respective holders of the said several bonds, collectively, that no other suit or proceeding for the collection of any part of the principal or interest represented by the said bonds and coupons shall ever be commenced or prosecuted, either against the party of the first part, or any of its officers, directors or shareholders, either by the said holders of the said bonds or coupons or any of them, or by any person or corporation to whom the same or any of them may be assigned or transferred, except such suits or proceedings as shall be necessary to recover the possession of the said premises hereby conveyed or to subject the same to the payment of the said debts,

and that the sale of the said mortgaged premises, whether under the power of sale hereby granted, or any other power of sale, or by or under any judicial proceedings whatsoever, shall operate as a full and complete satisfaction and discharge of the indebtedness of the said party of the first part upon the said bonds and the coupons accompanying the same, and of the obligation of the covenants herein contained, whether the said premises shall be bidden in for the whole amount of said indebtedness or for a less price, anything in the said bonds and coupons or therein contained, to the contrary thereof notwithstanding."

It was provided by article 10, among other things, as follows :

" The right of action under this indenture is vested exclusively in the trustee, and under no circumstances shall any bondholder or bondholders have any right to institute an action or other proceeding on or under this indenture, for the purpose of enforcing any remedy herein and hereby provided, or of foreclosing this mortgage, except in case of refusal on the part of the trustee to perform any duty imposed on it by this agreement ; and all actions and proceedings for the purpose of enforcing the provisions of this indenture shall be instituted and conducted by the trustee, according to its sound discretion ; but the trustee shall be under no obligation to institute any such suit, or to take any proceedings under this indenture, or to enter any appearances, or in any way defend in any suit in which it may be made defendant, or to do anything whatever as trustee, until it shall be indemnified to its satisfaction from any and all costs and expenses, outlays and counsel fees, and other reasonable disbursements, and from all possible claims for damages, for which it may become liable or responsible on proceeding to carry out such request or demand. The trustee may, nevertheless, begin suit, or appear in and defend suit, or do anything else in its judgment proper to be done by it as such trustee, without such indemnity, and in such case it shall be compensated therefor from the trust fund.

" The trustee shall be under no obligation to recognize any person as holder or owner of any bonds secured hereby, or to do or refrain from doing any act pursuant to the request or de-

mand of any person, until such supposed holder or owner shall produce said bonds and deposit the same with the trustee.

"It shall be no part of the duty of the party of the second part to file or record this indenture as a mortgage or conveyance of real estate or as a chattel mortgage, or to renew such mortgage, or to procure any further, other or additional instrument of further assurance, or to do any other act which may be suitable and proper to be done for the continuance of the lien hereof, or for giving notice of the existence of such lien, or for extending or supplementing the same; nor shall it be any part of its duty to effect insurance against fire or other damage on any portion of the mortgaged property, or to renew any policies of insurance, or to keep itself informed or advised as to the payment of any taxes or assessments, or to require such payment to be made; but the trustee may, in its discretion, do any or all of the matters and things in this paragraph set forth, or require the same to be done. It shall only be responsible for reasonable diligence in the performance of the trust, and shall not be answerable in any case for the act or default of any agent, attorney or employé selected with reasonable discretion; it shall be entitled to be reimbursed for all proper outlays of every sort or nature by it incurred in the discharge of its trust, and to receive a reasonable and proper compensation for any services that it may at any time perform in the discharge of the same; and all such fees, commissions, compensation and disbursements shall constitute a lien on the mortgaged property and premises."

Many other provisions and conditions were contained in the mortgage, which are not material to be mentioned.

Most of the moneys arising from the issuing of these bonds were applied towards the construction of the plant of the mortgagor company at its place of business in the city of Irwin, Pennsylvania. The company soon got into financial difficulties, and about January, 1894, the defendant Kann became a stockholder therein and was elected its treasurer. By March 19, 1894, the company had become involved in litigation, and was very greatly embarrassed financially, and some of the other officers of the company had disagreements with Kann in regard

to his advances of money, so that on the day last named a bill in equity was filed against the company, in the name of some of its creditors and directors, in the Court of Common Pleas of Westmoreland County, Pennsylvania, praying among other things for the appointment of a receiver of the property of the company, and for a decree winding up its business. In that suit Joseph W. Stoner, the then secretary of the company, was appointed receiver, and such proceedings were had therein that on or about June 18, 1894, the court made an order for the sale of all the property of the mortgagor company, and the same was sold at public auction to defendant Kann for the sum of $37,500, he being the highest bidder at the sale, which was open and public, and attended by others who made bids on the property. The sale was made subject to the mortgage to the complainant, and a deed was given by the receiver, pursuant to the order of the court, to Kann, the deed bearing date July 2, 1894, and reciting that the property was thereby conveyed "subject to a mortgage made by said Pennsylvania Plate Glass Company to The Farmers' Loan and Trust Company of the State of New York, dated first of January, 1891, recorded in Westmoreland County, in mortgage book No. 43, page 1," and being the mortgage or deed of trust made to complainant as stated. Kann continued in possession as owner of the property under this deed from the receiver until about July 1, 1895, when he conveyed, by deed dated on that day, all of the mortgaged property, together with the improvements made thereon by himself, to the defendant, The Penn Plate Glass Company, for a consideration named in the deed of $83,500. Kann in his evidence says the consideration really amounted to $118,000. The deed from Kann to the company also recited that the property therein conveyed was "subject to a mortgage made by said Pennsylvania Plate Glass Company to The Farmers' Loan and Trust Company of the State of New York, dated first of January, 1891, recorded in Westmoreland County, in mortgage book No. 43, page 1."

While Kann held the property he paid the interest on the bonds, but default was made in the payment of the coupons maturing on July 1, 1895, and no coupons have been paid since that time.

There was some insurance on the property when it went into the hands of the receiver in the suit which was commenced to wind up the affairs of the company, a portion of which insurance had not been paid for at the time of the appointment of the receiver, and he thereupon secured directions from the court to maintain the insurance, and for the purpose of paying the premiums thereon he issued receiver's certificates under the order of the court. Some but not all of this insurance was still in force when the receiver turned the property over to Kann at the time of the deed, July 2, 1894. This insurance expired by the lapse of time, and afterwards, and while Kann was in possession of the property under his deed from the receiver, he procured insurance upon his own interest therein and in his own name. These policies subsequently expired. The Penn Company when organized, and after it had purchased the property, took out insurance in its own name upon the same and for its own benefit exclusively, the amounts running from $250,000 to about $400,000, and the policies containing this provision: "This property is subject to a bonded indebtedness of $250,000, but it is distinctly understood and agreed that this insurance does not cover the interest of the bondholders." There was no insurance on the property during the time that the Penn Company owned it, other than as just stated, but that insurance was to an amount more than sufficient to secure the bondholders under the mortgage if the moneys were to be so applied.

While the property was in the hands of Kann and after the insurance thereon had expired, which had been procured by the mortgagor company or by its receiver, the mortgagee notified Kann and required him to keep up or renew or take out other insurance for the benefit of the bondholders under the mortgage, up to the amount thereof, and the same notice and requirement were given to and demanded of the mortgagor company. That company made default and Kann refused to take out any such insurance, and denied that he was under any obligation so to do. After Kann sold and conveyed the property to the Penn Company, the complainant notified that company and required it to insure in a sum sufficient to afford security for the bondholders under the mortgage to complainant. The Penn Company re-

fused to so insure and denied any obligation to do so, but, on the contrary, did insure for its own benefit, the policies of insurance containing the provision excluding the interest of the bondholders under the mortgage.

As stated, the mortgagor company, and also Kann and the Penn Company, defaulted in the payment of the coupons due July 1, 1895, and upon those due January 1 and July 1, 1896, and thereupon complainant commenced this suit by the filing of its bill July 8, 1896, asking for the foreclosure of the mortgage, and making the mortgagor company, Kann and the Penn Company defendants. On the same day a motion for a receiver was noticed on the ground that the mortgage was not good security for the debt. The mortgagor company made default and has not appeared in the suit. The other defendants duly appeared and opposed the motion. It was heard on July 20, 1896. Shortly after the motion had been argued counsel for the complainant received notice from the judge before whom the motion had been made, stating that he had concluded to deny the application for the appointment of a receiver. Upon a subsequent day, the parties being in court, (no formal order denying the motion having as yet been filed,) the counsel for the complainant said to the court that in the motion for a receiver it occurred to him that the court had not considered the fact that this property was without insurance; that there was danger of fire; that the plaintiff was a trustee without funds, and that that was a matter that ought to be considered; that the trustee was entitled to insurance. Counsel upon the other side denied that they were bound to insure under the terms of the mortgage, and so the dispute continued before the judge, counsel for the complainant insisting that complainant should have insurance and counsel for the other side denying that complainant was entitled to it at the cost of the defendants, and at the end the judge remarked that he could not then decide that question, but intimated to counsel for defendants that if they were bound to insure they ought to protect the complainant as trustee and mortgagee. Finally it was suggested that a bond should be given of the tenor now to be mentioned, but counsel for complainant stated in his evidence upon the subject given in this

case, that he did not wish to be misunderstood, and that it must be admitted that counsel for the defendants, upon the occasion mentioned, expressly denied that they were bound to insure for the benefit of the bondholders; the bond or agreement was given just as its terms set forth, that if defendants were bound to insure the insurance would stand for the benefit of the complainant, and if not, the complainant would get nothing. The bond or agreement was then given by Emanuel Wertheimer and defendant Kann. It was put in evidence, and Wertheimer and Kann therein agreed "that in the event of a loss by fire of the property described in the said Pennsylvania Plate Glass Company mortgage, that then there shall be paid out to the said Farmers' Loan and Trust Company, trustee, in trust for the holders of valid bonds secured by the said mortgage, a sum equal to the total amount of such valid bonds, out of the policies of insurance existing in favor of the Penn Plate Glass Company. Provided, that it shall have been finally adjudicated that the Penn Plate Glass Company, the present owner of said property, is bound or liable by anything contained in the said mortgage, or the terms of its purchase of the described mortgaged premises, to keep and maintain insurance for the benefit of the holders of bonds secured by the said mortgage." This agreement was given, as counsel for complainant stated, in order to meet the views of the court, "that if I was entitled to insurance I should have a bond, and if I was not entitled to insurance, I would get nothing."

By an interlocutory order, as mentioned in the decree subsequently entered, and grounded upon this agreement, the court appointed Emanuel Wertheimer as receiver for the purpose of receiving the insurance moneys under the various policies of insurance, and, pursuant to such appointment, Wertheimer was directed to hold, as such receiver, $125,000 of the insurance moneys so collected, and if it should be finally decreed that the complainant had an equitable lien upon such insurance moneys, then the receiver was to pay over to the complainant so much of that sum as should be necessary to pay and discharge the $90,000 of the bonds secured by the mortgage, not including the $160,000 of such bonds belonging to Wertheimer, in regard

to which he released and waived all claim to an equitable lien upon the said sum of $125,000 so collected and held by him, and he was also to pay to the complainant and discharge the coupons upon such $90,000 of bonds.

The formal order denying the motion for a receiver was filed September 7, 1896. Considerable testimony was taken in the case subsequently to that time upon the various issues made by the pleadings, but the trial had not been concluded, when on April 12, 1898, a fire occurred, by reason of which, as claimed on the part of the mortgagee, the greater part of its security was destroyed. A supplemental bill was then filed by complainant by leave of court, and various insurance companies which had insured the property for The Penn Company were brought in as parties to the suit, and the complainant demanded, in addition to the relief which was prayed for in the original bill, a decree providing that the complainant should have a first lien on the insurance moneys paid or to be paid under such policies for the purpose of paying the bondholders holding the $90,000 of bonds as above mentioned, any balance which might be due them after the sale of the mortgaged premises should be made, if such sale should result in any deficiency in the payment of those bonds.

Testimony was taken relative to the averments contained in the supplemental bill. It was proved on behalf of The Penn Company that since Kann and The Penn Company had the title to and possession of the property, there had been spent by them upon the property, by way of repairs and improvements, between $180,000 and $200,000.

The decree of the Circuit Court, after providing for the foreclosure and sale of the mortgaged premises, made specific provision for the application of the insurance moneys in the hands of Wertheimer to the payment of any deficiency that might arise, after applying the proceeds of the sale of the mortgaged property to the payment of the bonds mentioned in the decree.

*Mr. Herbert B. Turner* and *John G. Johnson* for petitioner.

*Mr. Louis Marshall* for respondents.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The only question involved in this case arises from the provision made in the decree by the Circuit Court Judge, impressing what is termed an equitable lien upon the insurance moneys collected on the policies taken out by The Penn Company, sufficient to pay any balance which may remain unpaid on the bonds secured by the mortgage to complainant, after the application of the proceeds of the sale of the property mortgaged. The Circuit Court held that the complainant had such equitable lien, while the Circuit Court of Appeals, Judge Acheson dissenting, was of the contrary opinion, and therefore reversed that portion of the decree which provided for it.

The policies upon which the moneys were collected to pay the loss happening by fire, were taken out by The Penn Company for the purpose of covering its own interest in the property, and the language of the policies covered such interest only. There was no contract in the policies covering the interest of the complainant as mortgagee, nor was the insurance, in fact, effected for the purpose of carrying out any agreement or obligation on the part of The Penn Company with the complainant to effect insurance covering the interest of the bondholders. On the contrary, this purpose was disaffirmed and the obligation denied. The Penn Company had the right to insure its own interest, and unless there was some contractual obligation on its part on the subject, which bound it, or some conduct on its part, or on the part of Kann, its immediate grantor, which would estop it from setting up the fact that it had procured the insurance for itself, the moneys arising out of the contracts which it made with the various insurance companies, cannot be taken from it and bestowed on the complainant for the benefit of the bondholders secured by the mortgage in suit. Some obligation of the defendant of a contractual nature must exist, or some conduct must be proved, estopping the defendant from denying such obligation, before the court can be authorized to take such moneys and bestow them upon the mortgagee for the benefit of the bondholders.

The complainant asserts that, without regard to any pro-
vision in the mortgage, it has an equitable lien upon The Penn
Company's insurance, and that, under the circumstances, such
company must be treated as in the position of a receiver ap-
pointed on complainant's motion in this case. The peculiar
circumstances upon which the claim is based that defendants
should be so treated, seem principally to be the denial of com-
plainant's motion for the appointment of a receiver at the time
of the commencement of this suit to foreclose the mortgage,
and the fact that The Penn Company had insurance on the
property. The denial of the motion for a receiver, it is
averred, was brought about by the opposition of the defend-
ants Kann and The Penn Company, and it is argued that they
ought not to have opposed the motion, and their opposition
was improper and in bad faith. But it must be remembered
they were parties to the suit, and in the legal protection of
their rights it was perfectly proper for them to oppose, before
the court, the appointment of a receiver, even though their op-
position secured the denial of the complainant's motion. We
see nothing upon which to base an accusation of bad faith in
this conduct of defendants. The complainant, however, re-
gards the application for a receiver as the same in substance
as an application to take possession of the premises in pur-
suance of the provisions of the mortgage, consequent upon a
default in the payment of the principal or interest of the bonds,
or because of a violation of any other of the covenants con-
tained in such mortgage. Even if that be so, we see nothing
in such fact to in any way alter the right of defendants to op-
pose by argument before the court the appointment of a re-
ceiver. There is no pretence that they made any allegations
upon the hearing which were untrue or that their opposition
was based upon anything other than conceded facts. Possibly
the Circuit Court ought to have appointed a receiver upon the
application of the complainant. That was a matter resting a
good deal in its sound discretion. The Penn Company and
Kann were, however, entirely within their legal rights when
they opposed such application, and we are unable to see that
their conduct in so doing in any manner altered those rights

or added to their own legal obligations. Very likely a receiver, if he had been appointed, would on his own motion have taken out insurance upon the property, or would have been directed by the court to do so, in order to cover the interest of the bondholders. But no receiver was appointed and no such insurance was taken out, and we cannot see that the defendant, The Penn Company, has in any manner made itself liable to pay to the complainant any of the insurance moneys which it obtained to cover its own interest only, in the property, because of the successful opposition made by it to the appointment of a receiver.

The court on hearing all sides and interests denied the application. There was nothing which then prevented the complainant from itself taking out insurance under the tenth article of the mortgage. It could have taken out such insurance as a thing proper to be done by it as trustee within the provisions of the mortgage, and in such case it would have been entitled, by the specific provisions in the tenth article, to reimbursement therefor and to compensation from the trust fund. We do not say that it was its duty to do so, for it had no cash of the mortgagor on hand, but it had the power under the article to advance the insurance premiums and the right to demand reimbursement and compensation for having done so. The fact that it had no funds at its command at that time is very likely an answer to the proposition that it was its duty to have itself procured insurance; but if it had advanced the money and thus procured the insurance, the amount which it advanced would have been a lien on the trust fund and payable thereout before any claim on the part of the bondholders could have been asserted. The risk of loss to the complainant by making such advances would have been nothing. We refer to the subject to show that the mere fact that the trustee was without actual cash in hand to procure the insurance is not material.

Nor can we see that the execution of the agreement soon after the court had decided to deny the application for the receiver, in any way affects the liability of the defendants on this branch of the case. From the time that Kann bought the premises on the receiver's sale and took a deed therefor subject to

the mortgage, he denied any liability on his part to insure the premises for the bondholders, and refused so to do, and The Penn Company from the time it became the purchaser of the premises, also denied any liability to insure and refused to do it. The denial of this obligation to insure and the refusal on the part of both Kann and The Penn Company had been explicit, open and continuous from the time the property had first been acquired up to the hearing upon the motion for a receiver. Whether the defendants or either of them were bound to insure for the benefit of the bondholders was a question which the Circuit Court said it could not decide at that time. This was after the court had stated its determination to deny the motion for a receiver. Finally it was agreed between counsel who were then before the court that Kann and Wertheimer would sign an agreement that in the event of a loss by fire there should be paid to complainant out of the policies of insurance existing in favor of The Penn Company a sum equal to the total amount of valid bonds secured by the mortgage, provided it was finally adjudicated that the company, the then owner of the property, was bound or liable by anything contained in the mortgage or the terms of its purchase of the described mortgaged premises, to keep and maintain insurance for the benefit of the holders of bonds secured by the mortgage.

We do not see that this agreement altered in any degree or added to the rights or obligations of the defendants in regard to insurance on the premises. The agreement simply was that if the defendants were bound to insure, then they would take moneys arising from the insurance policies sufficient to pay the bonds. Whether they were or were not so liable was not determined or in any way intimated. If the court had then decided that they were liable, they would have had the opportunity of placing the necessary amount of insurance to cover the interest of the bondholders in addition to that which The Penn Company then had covering its own interest, but no such decision was arrived at and no such order was made and no extra or other insurance taken out, and all parties seemed to be content to rest upon their legal rights and to take the risk of an error as to what those rights were. To make a decree after a

loss has happened, by which the moneys arising from policies covering only the interest of The Penn Company and procured by it as security for such interest against the loss of property by fire, requires the existence of an obligation on the part of that company founded upon considerations other than the fact that it had opposed the appointment of a receiver, and that the agreement had been made in the circumstances mentioned. In our view there are no facts disclosed by this record which authorize or justify the court in regarding the defendants in the same light as if they were receivers appointed upon the motion made by complainant in this suit and as such had taken out these policies. The court with all the facts before it refused to appoint such receiver, and the fact that these defendants, Kann and The Penn Company, successfully opposed the appointment, furnishes no tenable ground to regard them as receivers because of such successful opposition. This ground of liability must, therefore, be rejected.

While it is true that as a consequence of this voluntary agreement entered into by Kann and Wertheimer, the latter was appointed a receiver to collect and hold a sufficient amount of the insurance moneys to pay these bonds, and in that way the moneys may be described as being in court, yet the court did not obtain jurisdiction to make any disposition of those moneys in behalf of complainant except upon the conditions made in the agreement, by virtue of which alone the moneys came under its immediate control. Unless the court held that there was a liability, as expressed in the agreement, it obtained no jurisdiction over these moneys to make a disposition of them in accordance with general equitable principles. There is no fund in court to be thus disposed of. We must confine ourselves, therefore, strictly to the question of whether there was a right on the part of the complainant to enforce the application of these insurance moneys, in the hands of the companies or of the defendants, to the payment of these bonds, and a corresponding liability of defendants to apply these moneys for the benefit of the bondholders, free from any assumed power of the court to make a disposition of the funds on general equitable principles because they are in its possession, and to that extent subject to its immediate control.

In this view, we must ask was there any obligation resting upon these defendants to insure by reason of the contents of the mortgage and of the deeds under which The Penn Company now claims title? In order to determine whether there was an obligation of this nature it must first be decided there was such obligation on the part of the mortgagor company, because if that company was never under any obligation to insure, it is clear that the grantees subject to the mortgage were also free from any liability of that nature.

It is claimed that the mortgagor company became liable to insure by reason of the provision in article tenth of the mortgage, or at least that it became thus liable to insure, when under that provision, it was required to do so by the mortgagee. That portion of the article directly in question here, after providing that it should be no part of the duty of the trustee to do certain things therein named, continued : "Nor shall it be any part of its duty to effect insurance against fire or other damage on any portion of the mortgaged property, or to renew any policies of insurance, or to keep itself informed or advised as to the payment of any taxes or assessments, or to require such payment to be made ; but the trustee may in its discretion do any or all of the matters and things in this paragraph set forth or require the same to be done."

It is argued that by this language a covenant arose on the part of the mortgagor, by which it covenanted to insure the property if required to do so by the mortgagee. Reading the whole of that article with the other provisions of the mortgage, we think there is great force in the reasoning of Judge Gray in the Circuit Court of Appeals, by which he concludes that there was no original obligation imposed by the mortgage on the mortgagor to insure for the benefit of the mortgagee. But we do not ourselves decide that no such obligation existed. The Court of Appeals did not place its determination upon that ground alone, but after discussing it and coming to the conclusion which it did, it then proceeded to discuss the question whether the defendant company was liable upon the assumption that there rested upon the mortgagor an original obligation imposed upon it by the mortgage to insure for the benefit

of the bondholders. We will make the same assumption, and the inquiry then arises as to the obligation of the defendants to themselves insure for the benefit of the bondholders after they respectively became the owners of the equity of redemption in the premises.

Kann became the purchaser under a receiver's sale ordered by the court and pursuant to its directions, and he received from the officer conducting that sale a deed conveying to him the premises subject to the mortgage of the complainant. He thus occupies the position of a purchaser at a judicial sale which was ordered to be made subject to the lien of an existing mortgage upon the premises to be sold, and he made no agreement which in terms obligated him to pay a dollar of the mortgage or to comply with a single one of the covenants of the mortgagor. Whatever his obligations may have been in regard to the mortgage or to the covenants of the mortgagor arising from the simple fact of his taking a deed subject to that mortgage, the obligations of his grantee are no greater than his own. The Penn Company took the title which he had subject to the same mortgage as in his case, and with no promise on its part, in terms, to pay the mortgage or to insure the premises for the benefit of any other interest than its own.

Counsel for the complainant argue that the extent of the obligation of grantees or purchasers subject to a mortgage in Pennsylvania has always been, at the least, that by taking such a deed the grantee impliedly agrees to indemnify the grantor against his liability on the mortgage. Many cases are cited by the parties on both sides in relation to this question.

In *Moore's Appeal*, 88 Penn. St. 450, decided in 1879, Chief Justice Sharswood, delivering the opinion of the court, it was held that such a clause was a covenant of indemnity only, as between the grantor and the grantee for the protection of the former. Or, in other words, it was held that on taking the land the grantee will indemnify the grantor to the extent of the mortgage, in the same manner as if the consideration had been paid in cash and then applied by the mortgagor at the time. It was also held that an agreement to pay the encumbrance might be implied from the circumstances of any particu-

lar case. In the course of his opinion the Chief Justice reviews many prior cases in that State, and, in speaking of the words " subject to the mortgage thereon," said:

" Why should a covenant be inferred from these words by the vendee to the vendor to do more than protect the latter from loss ? If there is no existing personal liability in the vendor by reason of his bond or promise under which he can be compelled to pay if the mortgaged premises prove insufficient, what reason is there that he should exact a covenant from his vendee for the benefit of a stranger ? If such personal liability does exist why should he exact anything more than indemnity ? Surely, then, something should appear to create the inference of such a covenant. The words 'under and subject' import no such thing. They import that the vendee takes the land encumbered, and at most that so taking it at an agreed consideration, which includes the encumbrance, he will indemnify the vendor to the extent of that consideration, in the same manner as if it had been paid in cash and so applied at the time. It is unwise to give an arbitrary, artificial meaning to words commonly used in contracts and conveyances, and thus entrap parties into engagements into which they had no reason to suppose, in the common use of language, they were entering. The act of assembly of June 12, 1878, Pamph. L. 205, has very wisely provided that the grantor shall not be personally liable unless he shall expressly assume such liability by agreement in writing, or condition in the conveyance."

In *Blood's Executors* v. *Crew Levick Co.*, 171 Penn. St. 328, the import of the clause " under and subject to the lien of " a mortgage was under consideration, and it was held that an implied covenant to indemnify arose from that language. It was also held that the vendor had no right of action against the vendee in such a deed until he had been forced to pay the mortgage, either in whole or in part. This was also held in a case between the same parties, reported in the same volume (171 Penn. St.) at page 339.

The act of June 12, 1878, of the Pennsylvania legislature, (P. L. p. 205,) provides as follows:

" Grantees of real estate which is subject to ground rent or

bound by mortgage or other encumbrance shall not be personally liable for the payment of such ground rent, mortgage or other encumbrance unless he shall, by an agreement in writing, have expressly assumed a personal liability therefor, or there shall be express words in the deed of conveyance stating that the grant is made on condition of the grantee assuming such personal liability therefor : *Provided,* That the use of the words 'under and subject to the payment of such ground rent, mortgage or other encumbrance, shall not alone be construed so as to make such grantee personally liable as aforesaid."

Under the various cases cited, and the statute above quoted, we may assume that by the law of Pennsylvania the grantee who simply takes a deed subject to the lien of a mortgage is at most nothing more than an indemnitor of his grantor against the payment of the mortgage or any part of it by such grantor. There is no liability on the part of the grantee to the mortgagee so that the latter has any cause of action against him for the payment of the mortgage. If the mortgagor be not liable to pay at all there is no liability resting on the grantee to pay.

It then becomes necessary to determine what liability, if any, rested upon the mortgagor. By reference to the fourth article of the mortgage, already set forth in the statement of facts, it will be seen that there is no personal liability on the part of the mortgagor. There is no obligation, therefore, on the part of The Penn Company to indemnify the mortgagor company for any personal liability to pay the mortgage or any part thereof, for no such liability exists. However much below the amount of the mortgage the land should sell for is, so far as this question is concerned, a matter of no legal interest to the mortgagor company, and the fact in no way creates any liability on its part. As there was no liability on the part of the mortgagor to pay any portion of the debt secured by the mortgage, and the liability, if any, to indemnify the mortgagor on its covenant to insure is, as stated by the judge delivering the opinion of the Circuit Court of Appeals, incidental and subordinate to its liability to indemnify the mortgagor regarding the mortgage debt, no such liability to indemnify upon the insurance covenant would seem to rest upon the defendant com-

pany or upon Kann, because there is none such existing in relation to the mortgage debt itself.

The covenant to insure does not run with the land, so that one taking a conveyance comes under a primary obligation to insure, over and above that of a mere indemnitor. *Columbia Ins. Co.* v. *Lawrence,* 10 Pet. 507, 513; *The City of Norwich,* 118 U. S. 468, 494.

But, assuming the law of Pennsylvania to be that there is an obligation on the part of these defendants, by reason of their taking the deeds subject to the mortgage, to indemnify the mortgagor on its covenant to insure, contained in the mortgage, what is the extent and character of that obligation thus assumed? The covenant on the part of the mortgagor, which we assume exists by reason of the language contained in the mortgage, was a personal obligation or covenant. The question then arises, what consequences would follow upon a breach of the covenant by the mortgagor? Suppose it had not conveyed the property and still remained the owner and in possession, and yet refused or omitted to insure, as it had covenanted to do in the mortgage, what remedy under this mortgage existed because of this violation by the mortgagor? The complainant might have taken out insurance and claimed reimbursement or added the premiums paid to the amount of the mortgage debt. It did not do so. What other remedy it had for a violation of any covenant by the mortgagor is stated in the mortgage. It is therein expressly understood and agreed between the parties " that no other suit or proceeding for the collection of the bonds shall be commenced, except such suits or proceedings as shall be necessary to recover the possession of the premises mortgaged, or to subject the same to the payment of the debts, and that the sale of the mortgaged premises, whether under the power of sale granted or any other power of sale, or by or under any judicial proceeding whatsoever, *shall operate as a full and complete satisfaction and discharge of the indebtedness of the mortgage and of the obligation of the covenants therein contained,* whether the premises should be bidden in for the whole amount of the indebtedness or for a less price, anything in the bonds or coupons to the contrary

thereof notwithstanding." The sale of the mortgaged premises is by the specific terms of the mortgage to operate as satisfaction of all the covenants contained in the mortgage. And in asking for the sale of the property, by the commencement of this suit, complainant cannot add to the relief it is entitled to by a sale, any other or different relief than that. By the express provisions of the mortgage there was not only an exemption of personal liability for the payment of the bonds and coupons, or any part of them, but there was also an exemption of all personal liability on account of the obligation of any other covenant contained in the mortgage; such exemption covering not only the obligation to pay the debt, but also any other covenant. Hence the obligation to indemnify the mortgagor on account of any failure by it to insure does not exist, because there is no liability on the part of the mortgagor to answer for its breach of covenant in any other way than by complainant taking possession of the premises, or by a foreclosure of the mortgage and sale thereunder. The mortgagor having conveyed the premises, has no further interest in them, and hence their sale under the mortgage would be no damage to the mortgagor, and no case for indemnity to it would be made out.

The alleged contractual obligation to indemnify, as well regarding the covenant to insure, as that regarding the payment of the bonds and coupons, does not help the complainant in this case, because of the affirmative provisions of the mortgage. Whether the sale, under the foreclosure prayed for in this case, has taken place or not, there is no other or personal liability of the mortgagor to respond for its breach of covenant to insure than that which it has provided for in the mortgage. If it be under none other, then the indemnitor has nothing to indemnify.

In regard to the contractual obligation to insure on the part of defendants, which complainant avers exists as one of the foundations for the equitable lien claimed by it, the judge, delivering the opinion of the Circuit Court of Appeals, 103 Fed. Rep. 151, said:

"But, apart from cases of fraud, it is only when there is such

a contract or promise, which can be so enforced, that courts of equity will recognize for that purpose the existence of an equitable lien. In such case the lien is impressed upon funds or property which, belonging to the promisor, were the very funds or property which constituted the subject-matter of the contract or to which the contract or promise related. It is essential, therefore, that the funds or other property, which are to be charged with the lien, should have, either at the time of the contract or afterwards, and while it was still unperformed, belonged to the party against whom the contract is to be so enforced, and be so identified, even though at the time of suit the said funds or property have come into the hands of volunteers, or of others who may be affected with notice. There must, therefore, exist a contract by the party owning, either *in præsenti* or in expectancy, the property sought to be charged, which directly or by necessary implication, expresses the intention to charge such property with the lien, in favor of the other party to the contract. . . . It is not pretended that there was any contract between Kann or the appellant company and the complainant to insure for its benefit, or any promise or declaration of intention, upon any or no consideration, that they, or either of them, would so insure, or that policies or funds arising therefrom should be assigned or charged with a lien in its favor. The first essential requisite to an equitable lien, as above described, is, therefore, entirely wanting. There is no contractual relation of any kind between the mortgagee and the appellant," (respondent in this court) "in whose name, and for whose sole benefit, these policies of insurance were taken out. If such a lien, therefore, exists on these insurance funds, in favor of the complainant, it must be on other grounds than these ordinary and well-understood ones. This is not the case of a mortgagee claiming an insurance taken out by the mortgagor, who had covenanted to insure for the benefit of the mortgagee; nor is it the case of such mortgagee claiming such insurance funds, when they had come into the hands of third persons, 'who are either volunteers, or who take the estate [the insurance funds] on which the lien is agreed to be given with notice of the stipulation.' The complainant does not claim that the funds due on policies taken out

by the mortgagor, and which the mortgagor is held to have promised that he would assign to the mortgagee, have come into the possession of the appellant (respondent), with notice, and are, therefore, charged with a lien in favor of the mortgagee. Its claim is that the grantee of the equity of redemption, having taken the property expressly subject to the mortgage, which contained a covenant on the part of the mortgagor to insure, on that ground alone came either under a direct obligation to insure the premises for the benefit of the mortgagee, or under an obligation to indemnify the mortgagor for his liability under said covenant. But the property or 'estate' which came to the hands of the appellant, as grantee of the equity of redemption, was the mortgaged premises, subject to the mortgage. There is no difficulty in determining what that estate is to be charged with. The court here, however, is asked to impress a lien in favor of the mortgagee, not on this estate, but upon funds which were never in any sense the property of the mortgagor, and could never have been the subject-matter of a promise on its part. It is the first branch of the claim above stated (*i. e.*, the alleged direct obligation) that we are now considering."

We fail to see any contractual obligation on the part of the defendants to insure for the benefit of the bondholders further than we have stated, as indemnitors of the mortgagor for its breach, if any, of its covenants.

The case of *Wheeler* v. *Insurance Company*, 101 U. S. 439, is founded upon the existence of the obligation of the mortgagor to insure, and it is said that under such circumstances the mortgagee will have an equitable lien upon the money due upon a policy of insurance taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed, and that such equitable lien exists, although the contract provided that in case of the mortgagor's failure to procure and assign that insurance, the mortgagee might procure it at the mortgagor's expense.

If the insurance had been taken out by this mortgagor company, even in its own name, we would have the same principle as decided in the last cited case, and the complainant herein

might, as its counsel claim, have had an equitable lien upon the moneys arising from such insurance to the extent of the loss. under the mortgage. But here is no such case. The mortgagor did not insure after it lost title to the property under the conveyance by its receiver to Kann, and the insurance that was procured was for the interest of the defendants in the property to the exclusion, in terms, of the interest of the complainant. Although the defendant bought subject to the mortgage and with full knowledge of the insurance covenant, yet it held the property subject only to an obligation on its part, at most, to indemnify the mortgagor on account of the mortgage debt or on account of its covenant to insure, and we have seen that that obligation, under the terms of this mortgage, was of no materiality because by its terms the mortgagor was under no personal liability, and there was, therefore, no subject upon which indemnity could rest.

If there is no contractual obligation arising from the terms of the mortgage, and the taking of the deeds with an "under and subject" clause, as above referred to then there must have been some conduct on the part of the person to be, charged which would estop him from setting up as a defence the lack of such obligation. The complainant urges that the defendants have been guilty of conduct which does estop them from denying their liability. This is a different claim from that first remarked upon as to the treatment of defendants as receivers. This claim is based upon a survey of the whole conduct of defendants in connection with the mortgagor company and the insurance upon the property. The record in this case, in our opinion, discloses no conduct on the part of the defendants which estops them or either of them from showing the lack of any obligation on their part to apply any portion of the insurance moneys to the payment of the bondholders. There has been no wrecking of the mortgagor company by either or both defendants, and neither has done anything depriving himself or itself of any defence he or it might otherwise have. In other words, both defendants have, so far as this record shows, full liberty to set up as a defence the want of any contractual or other obligation to insure. The opinion of the Circuit Court of Ap-

peals is quite full in regard to this claim, and we feel there is no necessity in ourselves going over this particular ground.

After a careful consideration of the whole case, we are of opinion that the judgment of the Circuit Court of Appeals was right, and it is, therefore,

*Affirmed.*

MR. JUSTICE GRAY did not hear the argument and took no part in the decision of this case.