CHRISTIAN N. CHARLSON et al., Appellants, v. FARMERS STATE BANK OF LAKE MILLS, Appellee.

EVIDENCE: Burden of Proof—Fiduciary Relation. No confidential 1 relation may be said to exist between the officers of a mortgagee and the mortgagor because of the fact that on a few occasions the officers had aided the mortgagor in closing ordinary business transactions.

REFORMATION OF INSTRUMENTS:   Mistake—Gross Negligence in
Failure to Read.   The maker of an instrument may not avoid it
because he did not have knowledge of its contents, when he failed
to avail himself of admitted ability to read and of unrestricted
and uncircumvented opportunity to read.

MORTGAGES:   Consideration—Pre-existing Debt.   A pre-existing in-
debtedness is ample consideration, as between the debtor and
creditor, for the execution of a mortgage securing its payment. (See
Book of Anno., Vol. 1, Sec. 9440 et seq.)

Headnote 1:   27 Cyc. p. 1132.   Headnote 2:   27 Cyc. p. 1122.   Head-
note 3:   27 Cyc. p. 1051.

*Appeal from Winnebago District Court.—*JOSEPH J. CLARK,
Judge.

JANUARY 12, 1926.

ACTION in equity by the mortgagors to set aside a mortgage
as having been procured by fraud. On the trial below, the plain-
tiffs waived all claims except that the mortgage be set aside or
reformed as to the homestead.  From a decree dismissing the
petition and establishing and confirming the lien of the mort-
gage, the plaintiffs appeal.—*Affirmed.*

*Meighen, Knudson & Sturtz* and *L. A. Jensen,* for appel-
lants.

*Senneff, Bliss & Witwer,* for appellee.

VERMILION, J.—The issue in the case, as finally submitted
in the court below and here, is whether the mortgage should,
in effect, be reformed by excluding therefrom the homestead of
the appellants.  The situation of the parties at the time of the
execution of the mortgage is shown to have been substantially
as follows:  The appellants, husband and wife, were upwards
of 60 years of age, the parents of several grown sons, and the
husband was the owner of 400 acres of land, upon one tract of
which they had lived for many years.  The land was incumbered-
by mortgages upon different tracts, aggregating $25,000, that
upon the quarter section including the homestead being for
$9,000.  The appellant Christian N. Charlson was very heavily

involved, aside from these mortgages. He owed the appellee bank around $25,000; the First National Bank of Lake Mills, an amount between $23,000 and $28,000; the Farmers Savings Bank of Leland, $8,400; the First National Bank of Forest City, $5,600; and other banks and individuals, other amounts. Many of these obligations were contracted as surety for his sons, and, until shortly before the giving of the mortgage in question, they were unsecured.

On August 12, 1921, the appellants executed a mortgage to the First National Bank of Lake Mills upon 240 acres of the farm, aside from the quarter section that included the homestead, to secure $12,000 of the indebtedness due that bank. When this mortgage went on record, other creditors became active in efforts to obtain security. On the morning of the next day, the appellant Christian N. Charlson alone executed a mortgage to the Farmers Savings Bank of Leland upon the quarter section that included the homestead, to secure $8,425, and chattel mortgages upon his personal property to secure certain other creditors.

After the execution of these mortgages, Christian N. Charlson visited the appellee bank and informed Mr. Sheimo, the president, of their execution. It is admitted that Charlson was willing to give the bank security in some form. He testified that he offered to give a mortgage on 240 acres aside from what is spoken of as the "home quarter section." Sheimo testified that he insisted on a mortgage on the entire 400 acres, and that Charlson agreed to this. It is, however, undisputed that Sheimo then prepared two notes, one for $10,000 and one for $14,500, and a mortgage securing them, which was intended to describe the entire farm, and which did cover the homestead. These notes represented approximately the amount of Charlson's indebtedness to the bank, and, according to a so-called collateral agreement executed by appellants, the notes and mortgage were to be held as collateral security for the indebtedness.

There is some dispute as to whether Charlson signed the notes and mortgage at the bank or later at the farm. But it is undisputed that Charlson, Sheimo, and one Methus, a notary, proceeded to the Charlson home, and that there the appellant Bertha Charlson signed the notes and mortgage.

I.  It is first contended that Sheimo, or the appellee bank, occupied such a confidential and fiduciary relation to appellants that the burden is upon the appellee to establish that the

1. EVIDENCE: burden of proof: fiduciary relation.

mortgage was freely and fairly executed.  We think the evidence does not warrant such a conclusion.  The relations between appellants and the bank were those usually existing between a bank and a borrowing customer, except that the bank had procured for appellants a new first mortgage loan on part of the land.  The mortgage securing this loan had been executed and recorded, but the money had not been paid over to Charlson because of an outstanding judgment against him.  The bank was endeavoring to get this judgment satisfied or adjusted, so that the money could be paid.  It appears that Sheimo had, on two occasions, accompanied Charlson and one of his sons to Albert Lea, Minnesota, in the effort to close up a trade the son had made.  We see nothing in either of these transactions that would warrant a finding that the relations between the bank or its officers and appellants were confidential or fiduciary in character.

Although appellants would now claim that the bank was their confidential adviser, when they began securing their creditors the bank was not only not preferred above all others, but was not even informed until after the mortgages covering all their property were executed.  When its officers then, in competition with other unsecured creditors, sought security, we think the parties were in adversary positions, and were dealing at arm's length with respect to the obligations of one to the other.  In such situation, the burden was on appellants to establish such fraud or deceit on the part of appellee and such mistake on their part in connection therewith as would require the reformation of the mortgage.

II.  Upon appellants' own testimony, they simply signed the mortgage without reading it or having it read to them.  Neither of them claims that Sheimo in any way misrepresented

2. REFORMATION OF INSTRUMENTS: mistake: gross negligence in failure to read.

the terms of the mortgage or the land it covered, or that he, by any artifice or deceit, prevented them from reading the mortgage for themselves.  They both could read, although

Charlson read with some difficulty. The mortgage was on a printed blank, filled in on a typewriter.

Christian N. Charlson claims to have relied entirely on the fact, as testified to by him, that he had told Sheimo he would give a mortgage on 240 acres, and supposed that was the land described in the mortgage. Sheimo testified that Charlson agreed to give the mortgage on all the land, and that the mortgage was so prepared and laid before Charlson at the bank; and both he and the notary testified that Charlson there signed it, and that, at the farm, when Mrs. Charlson signed the notes and mortgage, Sheimo stated that the mortgage covered all their land. This was denied by appellants.

Mrs. Charlson claims to have signed the mortgage in the belief that it was some sort of an instrument concerning the release of the judgment against her husband and one of her sons. She does not claim that Sheimo or anyone else so represented it to her, and her testimony in this respect is entirely without corroboration. Many of the admitted or clearly established circumstances tend strongly to show that she knew she was signing a mortgage. She and her husband, earlier in the day, had talked of giving security to Sheimo's bank. The mortgage was executed on the second day that appellants had been beset by vigilant creditors seeking security. She signed the two notes and the mortgage and a typewritten collateral agreement.

Much of the testimony relates to subsequent negotiations between the parties in which, appellants claim, Sheimo repeatedly promised to release the homestead. This is denied by Sheimo and the other officers of the bank. There is much in the conduct of the parties in these later transactions that tends as strongly to support the view that Mrs. Charlson regretted having signed a mortgage on her homestead as that she was then claiming to have been deceived into signing it.

In short, as we read the record, it fails to establish any fraud or deceit on the part of Sheimo, and at most, establishes no more than that appellants were guilty of gross negligence in signing the mortgage without reading it or having it read to them. The law governing such a situation is well settled. *Midland Mtg. Co. v. Rice,* 197 Iowa 711, and cases there cited. *First Nat. Bank v. Ten Napel,* 198 Iowa 816, is a case in point on many of the propositions urged by appellants.

The mortgage, although given to secure a pre-existing indebtedness, was, nevertheless, upon a valid consideration. *Meyer v. Evans,* 66 Iowa 179; *Chadwick v. Devore,* 69 Iowa 637; *Johnston & Son v. Robuck,* 104 Iowa 523; *Rea v. Wilson,* 112 Iowa 517. And, conceding Mrs. Charlson's position to be that of a mere surety, it was not necessary that a consideration run to her. *Sherman v. Smith,* 185 Iowa 654; *Bell v. Cooper,* 190 Iowa 530.

3. MORTGAGES: consideration: pre-existing debt.

. The law imposed on the bank, as a creditor, the duty of dealing with her, as such surety, in the utmost good faith. *Lingenfelter Bros. v. Bowman,* 156 Iowa 649; *First Nat. Bank v. Ten Napel,* supra. The evidence does not establish, by the quantum of proof required in such a case, that there was, on the part of the bank or its officers, any dereliction in that respect.

No useful purpose would be served by a more detailed recital of the testimony. A careful reading of the record satisfies us that there has been a failure on the part of appellants to establish any fraud, deceit, or bad faith on the part of the bank or Sheimo in procuring the mortgage. The only claim is that he did not read the mortgage to appellants or tell them that it covered the homestead. It is unquestioned that they had ample opportunity to read it for themselves, and both the notary and Sheimo testified positively that the latter told them that the mortgage covered all their land.

The testimony of the appellants themselves is by no means so consistent or reasonable or free from contradictions as to require us to say that they are more worthy of belief at this point than Sheimo and the notary. We agree with the trial court that the appellants failed to make a case entitling them to relief.

Our labor in considering this case has been greatly increased by the total disregard of our rules in the preparation of the abstract. A volume of 600 pages, purporting to be an abstract, is apparently but a verbatim copy of the transcript. While, in view of the result of the case, no penalty will now be imposed for the failure to observe the rule, we cannot permit such a flagrant violation to pass without comment.

The decree below is—*Affirmed.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.