C. C. Hakes, Appellant, v. C. F. Franke et al., Appellees.

No. 40169.

May 16, 1930.

Rehearing Denied October 14, 1930.

1170

R. F. Clough, G. M. Titus, and Blythe, Markley & Rule, for appellant.

Senneff, Bliss, Witwer & Senneff and Smith & Feeney, for appellees.

WAGNER, J.—The notes in suit and mortgage securing the same were executed unto the Titus Loan & Investment Company. The plaintiff, Hakes, is the holder of the notes, and assignee of the mortgage. It was stipulated, for the purpose of trial, that, if the defenses pleaded by the defendants Senneff and Shepard are good as against the Titus Loan & Investment Company, the same shall be good against the plaintiff, Hakes.

On January 25, 1919, the defendant John A. Senneff, the record owner of 320 acres of real estate in Cerro Gordo County, and his wife, Cora M. Senneff, executed unto the Titus Loan & Investment Company their notes aggregating $37,000 and a mortgage upon said real estate as security for the payment of the same. The notes, according to their terms, became due on March 1, 1924. On March 17, 1919, the defendants Senneff executed and delivered to the defendant Shepard their deed of conveyance for an undivided one-half interest in the real estate herein involved, the deed reciting that the conveyance is "subject to mortgage of $37,000 to Titus Loan & Investment Company, one half of which the grantee assumes and agrees to pay with interest thereon from the date of said mortgage." On January 22, 1920, the defendants Senneff and Shepard executed unto John Shanks their warranty deed for the real estate herein involved, the deed reciting that the land is subject to a mortgage of $37,000, which the grantee assumes and agrees to pay. Shanks became indebted to the Central Trust Company of Mason City, and executed unto said Trust Company a second mortgage upon the real estate securing said indebtedness, which mortgage was foreclosed, and said Trust Company became the purchaser of the

real estate on special execution sale; and on January 13, 1923, a sheriff's deed was executed unto said Trust Company.

Inasmuch as the title of the Trust Company was subject to the mortgage of the Titus Loan & Investment Company, which became due on March 1, 1924, the Trust Company desired an extension of time of payment of the mortgage. On February 23, 1924, a deed was executed by the Trust Company to C. F. Franke, who had official connection with the Trust Company. On February 28, 1924, there was entered into between Franke and the Titus Loan & Investment Company an extension agreement, which, omitting the acknowledgment, in regular form, is as follows:

"Memorandum of agreement, made and entered into this 28th day of February, 1924, by and between C. F. Franke of Cerro Gordo County, state of Iowa, and Titus Loan & Investment Company of Muscatine, Iowa, witnesseth: That the time of payment of the principal sum of thirty-seven thousand ($37,-000.00) dollars of the following described mortgage debt which will be due March 1st, 1924, is hereby extended by mutual consent of the parties hereto for five years from said first day of March, 1924, upon the same conditions, agreements and stipulations as stated in said notes and mortgage made to secure the same. The said notes and mortgage are described as follows: Twenty-one notes aggregating $37,000.00, of date January 25th, 1919, given by John A. Senneff and Cora M. Senneff, his wife, to Titus Loan & Investment Company, Muscatine, Iowa, with interest at six per cent payable annually on March 1st of each year, secured by a mortgage made by John A. Senneff and Cora M. Senneff, his wife, to Titus Loan & Investment Company, covering the following described real estate situated in Cerro Gordo County, state of Iowa, to wit: [Here follows description of real estate], which mortgage was recorded January 29th, 1919, on page 610 of Volume 63, records of Cerro Gordo County, Iowa, the said premises having been conveyed to C. F. Franke, who hereby specifically assumes the payment of the mortgage debt herein described. This agreement is made upon the express condition that it shall not be construed as precluding the said Titus Loan & Investment Company, its successors or assigns, from enforcing any and all its rights against any person liable upon said notes as maker, indorser, guarantor or other-

wise, whose written assent hereto has not been obtained, for which purpose said notes may be treated as overdue and collected immediately, in accordance with the terms of said notes and mortgage, as if this agreement had not been made.

"It is expressly agreed and understood, that nothing in this extension agreement shall change or affect in any manner the conditions and stipulations of the notes and mortgage above described and referred to, except as herein stated.

"Witness our hands the day and date first herein written.
"[Signed] · C. F. Franke,
"Titus Loan & Investment Co.,
"By [Signed]   G. M. Titus
"Pres."

It is shown that an exact duplicate or copy of the foregoing extension agreement, without the acknowledgment, was presented to the defendants John A. Senneff and Hugh H. Shepard, and thereon they signed and executed the following agreement:

"The foregoing extension agreement is a correct copy of an agreement made by the Titus Loan & Investment Company, and the undersigned, John A. Senneff, as maker of said notes, and Hugh Shepard, as a former owner of a one-half interest in the land described above which was conveyed to me with the express understanding that I would assume the payment of one half of said indebtedness, do hereby expressly agree to such extension and that any rights the said Titus Loan & Investment Company, its successors or assigns may have against us are not waived, and we are not released by such extension.
"Dated Feb. 28, 1924.
"[Signed]   John A. Senneff,
"[Signed]   Hugh H. Shepard."

In accordance with this arrangement, the Titus Loan & Investment Company indorsed on the notes the following:

"Time of payment of principal of this note is hereby extended for five years, to March 1st, 1929, at same rate of interest."

The interest due on March 1, 1928, was not paid, and on May 10th, Senneff was notified of the delinquency. On July

20, 1928, Senneff wrote the Titus Loan & Investment Company the following letter:

"July 20, 1928.

"Titus Loan and Investment Company,

"Muscatine, Iowa.

"Gentlemen:

"With reference to the $37,000.00 loan on the Northeast Quarter of Section 26, and the Northwest Quarter of Section 25, Township 96, Range 19, West of the 5th P. M. Cerro Gordo County, the originals of which were signed by me, and which were later assumed by C. F. Franke and upon which extension agreement was made by myself and Hugh H. Shepard, it would appear that in view of the assumption of this by Mr. Franke, he became primarily liable and that my liability would be that of surety only, and Mr. Shepard's liability, if any, would be that of surety only. And Mr. Shepard and I, therefore, request that you commence an action on the various notes and mortgage against all of the parties, including Mr. Shepard and myself; or that you furnish us copies of the notes and mortgage and extension agreement and permit us to bring an action in your name at our cost. The way the matter is running along, the receiver of the Central Trust Company is going to get these rents and let interest and taxes run.

"Yours very truly,

"[Signed]   Jno. A. Senneff."

It is conceded that the Titus Loan & Investment Company received said letter at Muscatine in the due course of mail.

This action was begun August 22, 1928. The plaintiff, in the petition, asks foreclosure of the mortgage and personal judgment against Franke, the Senneffs, and Hugh H. Shepard for the amount due upon the notes. Franke made default. Trial was had at the October, 1928, term of the Cerro Gordo County district court, and on November 7, 1928, a decree of foreclosure was granted, and personal judgment rendered against Franke for the amount due upon the notes; and the court, at that time, reserved jurisdiction as to the question of liability of the defendants Senneff and Shepard. Thereafter, on December 5, 1928, the issues, as between the plaintiff and said defendants, having been fully submitted, the plaintiff's

petition was, as to said defendants, dismissed at plaintiff's cost. From this action by the trial court, the plaintiff has appealed.

It is shown that, on special execution, the real estate sold for an amount of $4,000 less than the judgment. Hence, the amount herein involved, as between the appellees and the appellant, is the sum of $4,000.

We will first determine the merits as between the appellant and the appellees John A. Senneff and Hugh H. Shepard. In their brief, the appellees state their propositions in support of the decree as follows:

"Under and by virtue of the transaction wherein the notes, mortgage, and deeds were made, the defendants John A. Senneff and Hugh H. Shepard were sureties from the beginning, and were sureties on February 28, 1924. But whether they were liable to mortgagee as sureties or as principals on and prior to February 28, 1924, by the 'extension agreement' of that date, —that being between mortgagee and C. F. Franke, a third party, having otherwise no contractual relation with mortgagee or these defendants,—the contract was so changed as to be a new contract, and these defendants were no more than sureties in the relationship of the parties thus made. At and prior to July 20, 1928, right of action had accrued to the mortgagee, and on that date, notice and demand for suit was duly made, pursuant to Sections 9457 and 9458 of the Code, on behalf of all of these defendants. By failure of mortgagee to begin action within the time required by law released these defendants from liability."

The appellees contend that they are only sureties, and that, since they gave the written notice by the aforesaid letter of July 20, 1928, and since the plaintiff's action was begun more than ten days after the receipt of the same by the Titus Loan & Investment Company, they are discharged from liability. They rely upon Sections 9457 and 9458 of the Code, 1927. Said sections are as follows:

Section 9457. "When any person bound as surety for another for the payment of money, or the performance of any other contract in writing, apprehends that his principal is about to become insolvent or remove permanently from the state without discharging the contract, he may, if a cause of action has

accrued thereon, by writing, require the creditor to sue upon the same, or permit the surety to commence an action in such creditor's name and at the surety's cost.''

Section 9458. ''If the creditor refuses or neglects to bring an action for ten days after request, and does not permit the surety to do so, and to furnish him with a true copy of the contract or other writing therefor, and enable him to have the use of the original when requisite in such action, the surety shall be discharged.''

The appellant contends that said appellees are not sureties, and that, if they are such, the aforesaid statutory provisions are of no avail to them. It will be observed from the aforesaid statutory provisions that they are only applicable ''if a cause of action has accrued thereon.'' The notes upon which suit is brought, provide that, if any part of the interest remains unpaid ten days after due, the principal shall thereupon become due and payable without notice, at the option of the holder. The mortgage contains a similar option. The appellant contends that, at the time of the giving of the notice, the Titus Loan & Investment Company had not exercised the option to declare the indebtedness due, and that the cause of action had not accrued, within the meaning of the statute; that said option is for the benefit of only the holder of the notes and mortgage. In support of this proposition, he relies upon *Farmers & Merch. Bank v. Daiker,* 153 Iowa 484; *Collins v. Nagel,* 200 Iowa 562; 2 Jones on Mortgages (7th Ed.), Section 1182; and other authorities. The appellant further contends that said statutory provisions are in no event available to the appellees, for the reason that, by the language of the statute, it applies only to a case where one becomes surety for another by virtue of the terms of a written contract; that the statutory law refers to contracts in writing, binding sureties, and not to contracts of suretyship which arise by implication. In support of this proposition, the appellant relies on *Fish v. Glover,* 154 Ill. 86 (39 N. E. 1081). We find it unnecessary to pass upon these propositions urged by the appellant, for it is manifest that the statutes relied upon by the appellees are of no avail unless they are sureties within the meaning of the law.

It cannot be claimed that, when Senneff executed his notes and mortgage, he was then a surety. He was the maker of the

notes, and therefore his liability was that of principal. Upon the execution of the deed by the Senneffs to Shepard, and Shepard's assumption of payment, as between the Titus Loan & Investment Company and Shepard, Shepard was liable, because of his assumption agreement, and therefore both Senneff and Shepard were primarily liable to the Titus Loan & Investment Company,—Senneff (the maker of the notes) as principal, and Shepard by reason of his assumption agreement. We have held that the execution of a contract of extension of time of payment between an assuming grantee and the mortgagee, without the consent of the mortgagor and prior assuming vendees, does not release the mortgagor and prior assuming vendees. See *Iowa Tit. & L. Co. v. Clark Bros.*, 209 Iowa 169; *Herbold v. Sheley*, 209 Iowa 384; *Blank v. Michael*, 208 Iowa 402; *Royal Union Life Ins. Co. v. Wagner*, 209 Iowa 94; *Iowa L. & Tr. Co. v. Haller*, 119 Iowa 645; *Corbett v. Waterman*, 11 Iowa 86. In *Royal Union Life Ins. Co. v. Wagner*, supra, the contract of extension was made between the mortgagee and an assuming grantee and his wife, the wife being a third party, who had in no way theretofore assumed the payment of the mortgage debt.

In *Iowa L. & Tr. Co. v. Haller*, 119 Iowa 645, the suit was brought against the Hallers, the mortgagors, and against the Shockleys (subsequent grantees), who had not assumed and agreed to pay the debt, but who had signed an extension agreement with the mortgagee, in which they purported to assume the payment of the debt in consideration of the extension of time of payment. The trial court rendered judgment against both the Hallers and the Shockleys, and in this court, the judgment against the Hallers was affirmed, but that against the Shockleys was reversed, only because we found that there was a conditional delivery of the extension agreement signed by the Shockleys.

In the instant case, Franke was not liable for the payment of the mortgage debt by reason of any assumption agreement in his deed. However, in the extension agreement he *"specifically assumes the payment of the mortgage debt."* "To assume" means "to take to or upon one's self." Anderson's Dictionary of Law. Therefore, Franke took upon himself the obligation to pay the mortgage debt. As between him and the Titus Loan & Investment Company, he became liable because of his assump-

tion agreement. The language of the contract is such as to carefully guard against a discharge of the liability of any party previously obligated to pay the debt. Senneff and Shepard "do hereby expressly agree to such extension and that any rights the said Titus Loan & Investment Company, its successors or assigns may have against us are not waived and we are not released by such extension." Before the signing of said agreement, the right of the Titus Loan & Investment Company was to hold Senneff as principal and Shepard on his assumption agreement. By express agreement, duly signed, said rights still remained, and they were in no way released from such primary liability. The obligation of Senneff and Shepard was not changed or modified by the extension agreement. There was no novation. See *Royal Union Life Ins. Co. v. Wagner,* 209 Iowa 94; *Blank v. Michael,* 208 Iowa 402. The essentials of a novation are (1) a previous, valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, (4) the validity of the new one. See *Royal Union Life Ins. Co. v. Wagner,* 209 Iowa 94; *Hannan v. Murphy,* 198 Iowa 827. By the execution of the extension agreement, duly signed by Senneff and Shepard, there was no extinguishment of the debt or of the old contract; there was no substitution of the extension agreement for the prior agreements of Senneff and Shepard to pay. In *Blank v. Michael,* supra, we said:

"As there was no express agreement to extinguish their obligation [that of the mortgagors] and substitute a new one, or to release them, and as in this jurisdiction such an agreement is not implied, there was no novation."

See, also, as bearing upon this proposition, 46 Corpus Juris 591, 594, and 606. It is quite clear that, after the execution of the extension agreement, the Titus Loan & Investment Company could hold Franke, Senneff, and Shepard as primarily liable for the payment of the mortgage debt, and that the court was in error in refusing to render personal judgment against Senneff and Shepard.

Now, what as to the liability of the wife, Cora M. Senneff? It was stipulated at the time of the trial that she never had any interest in the land in question, and that, if present as a wit-

ness, she would testify that she never had received any benefit from the proceeds of the mortgage or disposal of the land; that none of the proceeds ever came into her hands, and that she never received any benefit in any manner, and that she merely signed the papers at the request of her husband; that she had nothing whatever to do with the request for the mortgage; and that she knew nothing whatever about it until the notes and mortgage were presented to her for signature. Objection to this stipulated testimony was made by the appellant. It is shown by the record, by testimony in behalf of the appellant, that the Titus Loan & Investment Company would not have paid the money without her signature to the notes. Therefore, it is shown that there is a consideration for her signature to the notes. The substance of her answer is that she received no consideration for the signing of the notes, and that her obligation is only that of surety, and that she is discharged from liability. It is a well recognized rule that, if as to the principal the note rests on lawful consideration, it will not avail that the surety received nothing for signing, and as to the surety, the consideration is the benefit received by the principal and the detriment to the payee in having relied on the undertaking of the surety. See *Windahl v. Vanderwilt*, 200 Iowa 816; *Carstens v. Gerdes*, 138 Iowa 199; *Bell v. Cooper*, 190 Iowa 529. The appellee Cora M. Senneff is not contending that she is released for want of consideration for her signing of the notes, or that she signed the same only for the purpose of conveying her dower, within the principle announced in *Hinman v. Treinen*, 196 Iowa 701; *LeFleur v. Caldwell*, 196 Iowa 727; *Insell v. McDaniels*, 201 Iowa 533; *Gorman v. Sampica*, 202 Iowa 802. Her claim is that she was a surety from the beginning. Her contention can be best obtained by quoting from the brief and argument the following:

"With respect to Cora M. Senneff, defendants, of course, do not contend that the allegation and fact that 'she received no consideration of any kind,' in itself, relieves her from all liability; but we do contend that that, together with other facts that she signed only at the request of her husband, etc., makes her a surety, with all of surety's equities, from the beginning."

It is thus clearly apparent that her sole contention is that her liability is that of surety from the time when she signed the notes. If it be conceded that her liability is only that of surety, yet, under the record as made, the appellant is entitled to judgment against her. In that event, the burden rested upon her to allege and prove an extension agreement without her consent. 8 Corpus Juris 930; 21 Ruling Case Law 1018; 21 Ruling Case Law 1023; *Fullerton Lbr. Co. v. Snouffer*, 139 Iowa 176. This she has failed to do. The aforesaid letter or writing of July 30, 1928, signed by John A. Senneff, refers only to the claimed liability of himself and Hugh H. Shepard, and in no way purports to have been written for or in behalf of Cora M. Senneff, and, had it been written in her behalf, it would not aid her; for, if she were a surety, her husband, and not Franke, was the principal, within the meaning of Sections 9457 and 9458 of the Code. On the other hand, if her relationship to the Titus Loan & Investment Company be not that of surety for John A. Senneff, but of principal, then the principles announced in our previous cases hereinbefore cited fix her personal liability, regardless of lack of consent.

It is apparent that the court was in error in not rendering personal judgment against the three appellees, and the action of the trial court in dismissing the petition as against them is hereby reversed.—*Reversed.*

STEVENS, ALBERT, KINDIG, and GRIMM, JJ., concur.