ADELINE ALLEN, Plaintiff, Appellant, v. THOMAS H. HUME et al., Defendants, Appellees; ADEL TOLLEFSON et al., Defendants, Appellants; ARTHUR L. HUNGERFORD, Administrator, Intervenor, Appellant; JOHN P. LUND, Intervenor, et al., Appellees.

No. 45110.

MARCH 12, 1940.

Arbuckle & Arbuckle, for Adeline Allen, appellant.

Hearst R. Duncan and W. H. Salisbury, for Thomas H. Hume and Mamie S. Hume, appellees.

Sasse, French & Dunnette and Senneff & Senneff, for Adel Tollefson, Jennie F. Kirkman and Mary Fedson, appellants.

W. J. Tyrrell and R. W. Zastrow, for Arthur L. Hungerford, appellant.

W. G. Henke, for John P. Lund, appellee.

Cronin & Kennedy, for B. A. Brigadier, appellee.

SAGER, J.—The pleadings cover nearly 125 printed pages of the abstract, but we have deemed it unnecessary to set them out herein except as to the controversy between appellees Hume and defendants Adel Tollefson, Jennie F. Kirkman and Mary Fedson.

The record satisfies us that the decree of the trial court was right in holding that plaintiff, the intervening administrator and John P. Lund failed to sustain their claims. Appellants were the holders of the notes of T. H. Hume in the principal sum of approximately $24,000. He gave deeds to lands owned by him to secure these notes. Appellee Mamie S. Hume joined in the conveyances executed by her husband. These deeds were given as security for the debts of T. H. Hume and for one note on which his wife was obligated. The deed over which the parties contend is Exhibit 2. It conveys 207 acres of land formerly owned by the wife. She argues that she received no consideration for signing the deed, that she signed none of the

notes it purported to secure, and that she signed the deed without knowing its contents. She admits that she signed and acknowledged the deed. Appellants claim that appellee Mamie S. Hume, having executed the deed and placed it in the hands of her husband with apparent authority to deliver it, is estopped from questioning it for the reason that, in reliance upon it, they surrendered 320 acres which they held up to that time. They also say that appellee Mamie was guilty of laches, and waiver of her rights.

The trial court found in favor of Mamie S. Hume and gave her a decree from which this appeal is taken. The trial court held there could be no estoppel or waiver against her unless she was grossly negligent, that appellants knew that there was no consideration for the deed, Exhibit 2, and that if they failed to pursue that security it was at their risk. We are unable to agree with the trial court.

■ As we read the record she admits what amounts to negligence, and we hold she may not impose on appellants losses directly caused by her carelessness. Charlson v. Farmers State Bank, 201 Iowa 120, at page 124, 206 N. W. 812. It was negligence to put such confidence in her husband as to sign anything and everything that he put before her. She was not illiterate. No reason appears why she could not have read. First Nat. Bank v. Ten Napel, 198 Iowa 816, 200 N. W. 405; Charlson v. Farmers State Bank, supra; Van Houten v. Van Houten, 202 Iowa 1085, 209 N. W. 293; First Nat. Bank v. Phillips, 203 Iowa 372, 212 N. W. 678. There is no claim of fraud, overreaching, or hint of unfair dealing by appellants. It follows that when Hume, clothed as he was with apparent authority to deliver the deed signed by his wife, induced the surrender of the 320 acres by delivering Exhibit 2, it was appellee Mamie who made the exchange possible. Under familiar rules of equity she may not now assert her one-time interests against appellants. Pomeroy's Eq. Juris., 4th Ed., Vol. 2, section 687, and notes; Willey v. Hite, 175 Iowa 657, 149 N. W. 250; Browning v. Kannow, 202 Iowa 465, 210 N. W. 596; Farmers Sav. Bank v. Pugh, 204 Iowa 580, 215 N. W. 652. We do not give to Mamie S. Hume's alleged lack of knowledge of the contents of Exhibit 2, nor her unfamiliarity with her husband's activities, the weight given it by the trial court. We

think that appellants have established a complete estoppel against appellees. See Pomeroy's Eq. Juris., 4th Ed., Vol. 2, section 805, page 1644; and Note (a), section 811, page 1667.

We cannot avoid the conclusion that Mamie S. Hume was, to use the trial court's phrase, "grossly negligent". As said above, she was not ignorant. She was deceived, if at all, by her husband in whom she had unwavering confidence. This, while admirable enough as evidence of conjugal affection, cannot be a reason for sustaining a decree which destroys security which she by her own act put in the hands of her husband to create. We do not overlook the fact that there is conflict in the testimony at many points. We have examined the voluminous record before us and from such examination, conclude that appellants' contentions should be sustained. Mamie S. Hume, being unacquainted with the principal events which make up the case, had to depend almost entirely upon the testimony of her husband. Appellant Adel Tollefson's testimony appears to us frank, candid and straightforward. Appellee Thomas Hume's testimony is halting—hesitant. He frequently took refuge behind a faulty memory. On the whole we find that Exhibit 2 should not be set aside.

These facts tend to support our conclusion: Appellee Hume, prior to 1929, was indebted to appellants in the sum of approximately $24,000. Becoming concerned about this investment, appellants sought and secured from him on May 3, 1929, a deed to 376 acres then owned by him. Mamie S. Hume, his wife, joined in and acknowledged this deed. In February 1930 Hume sold 20 acres of this land; and sometime between February 28th and the first of April, 1930, the deed to the 376 acres was released to him. At or about the same time, he executed two deeds conveying to appellants the remaining acreage. Both were signed by his wife. One of the deeds conveyed 320 acres.

Later the First National Bank, to which appellee Hume was heavily indebted, began pressing for security. Hume had none to give. A. N. Lund, officer of the bank, and likewise trusted agent of appellants, told Hume that a loan could be made on the 320 acres. The deed to this was at all times in the possession of appellants though unrecorded. There is no evidence that they gave up or authorized the surrender of the deed to this 320 acres without any thought of their own in-

terest. And it would seem to be contrary to experience and common sense that appellants would themselves, or permit Lund to, cancel a security ample to protect appellants when without it Hume's notes were worthless paper.

On April 1, 1930, Hume deeded the 320 acres as security to Koch for a loan, a part of which went to pay the note of appellee Mamie, the rest went to the bank. What became of the land or its proceeds eventually is not shown, nor is it important. Appellants got none of it.

On April 5, 1930, appellee Mamie signed the deed to the 207 acres in controversy and at the same time joined in a deed to another tract which stood in her husband's name. These were delivered to appellants on the day they were dated. Appellants contend that these deeds were taken in lieu of the 320 acre deed. We think it so happened. Much is said in argument about the interval of April 1st to 5th, the argument being that there was no connection between the release of the deed to the 320 acres and the delivery of Exhibit 2 on the latter date. There is nothing in the evidence to show when the Koch loan was completed. We see no significance in the fact that Exhibit 2 was not put into the hands of appellants contemporaneously with the release of the 320-acre deed. It is said that appellee Mamie received no consideration for Exhibit 2. It was not necessary that the consideration come directly into her hands. Hakes v. Franke, 210 Iowa 1169, 231 N. W. 1; American Com. & Sav. Bank v. Kramer, 206 Iowa 49, 219 N. W. 931; Sherman v. Smith, 185 Iowa 654, at page 659, 169 N. W. 216.

■ The situation in which appellee Mamie S. Hume finds herself is one to evoke sympathy but it is of her own making. We have here a case to which applies the principle thus expressed in Barnes v. Savings Bank, 165 Iowa 141, 171, 144 N. W. 367, 379:

"* * * where one of two innocent parties must suffer from the wrongs of a third person, he who placed the wrong-doer in a position to do the wrong must suffer the consequences of his act. This last is a short statement of a rule frequently applied in equity * * *."

■ Much attention is given to the question whether Exhibit 2 was a mortgage or a deed; and as to whether appellee Mamie's relation thereto is that of surety. The first proposi-

tion is avoided by appellants' consent to a redemption if their debt be paid. As to the other, if appellee Mamie was a surety, she became so by the very instrument which she seeks to avoid. Many cases are cited, among them that familiar line which holds that a wife who signs for the antecedent debt of her husband without a new consideration, is not bound by her undertaking. We are not called on to qualify or limit the principles announced in these decisions. They have no application here for the reason, as pointed out heretofore: the consideration which binds her was advantage to her husband and detriment to appellants.

We have given attention to the other testimony which tends to cast light upon what this transaction actually was and how the parties viewed it. We refer to the evidence of payment and apportionment of taxes, of delivery of checks by appellee Mamie, and the renting and collection of rents by appellants, but it would serve no good purpose to discuss them. We are satisfied that Exhibit 2 was delivered to appellants as a mortgage and the court erred in holding otherwise. While appellees Hume will perhaps not care to avail themselves of the right of redemption because of seeming disparity between the debt and the value of the land involved, they are entitled to it if they wish to avail themselves of it. Not only are they entitled to redeem the lands described in Exhibit 2, but also those described in Exhibits 3 and 4.

The cause is, therefore, reversed and remanded on the appeal of Adel Tollefson, Jennie F. Kirkman and Mary Fedson, with directions that the trial court ascertain the amount due to them after a proper accounting for taxes paid, rents and such other items as the court finds should be considered to do equity, and upon entry of judgment for the amount found to be due, the lien be foreclosed by sale on special execution with the usual equity of redemption preserved.—Affirmed on appeal of plaintiff and intervenor; reversed on appeal of defendants.

HAMILTON, C. J., and RICHARDS, OLIVER, MILLER, and HALE, JJ., concur.