## DUNCAN v. FINN *et al.*

1. **Statute of Limitations:** RECOVERY OF MONEY ADVANCED. An action to recover money advanced upon a verbal contract to pay it out for plaintiff's benefit, which defendant fails to do, is barred in five years after it accrues, in the absence of fraudulent concealment on the part of defendant.

2. **Vendors and Purchasers:** MORTGAGED PROPERTY: EXTENSION OF TIME TO PURCHASER: PERSONAL LIABILITY. Where one purchases mortgaged property, subject to the mortgage, but without assuming to pay the mortgage debt, which is not yet due, and he afterwards negotiates an extension of time on the debt, but expressly stipulates with the holder of the mortgage that he is not thereby to become personally responsible for the debt, he does not become so responsible, though the mortgaged property so depreciates in value as to become insufficient security for the debt.

3. **Negotiable Instruments:** INNOCENT PURCHASER. Where the holder of a note and mortgage has agreed with a purchaser of the mortgaged property for an extension of the time of payment, but no memorandum of such agreement is entered on the original papers, and these are transferred for value after the original date of their falling due, as shown on their face, and without any notice of the extension, the assignee of the paper takes it "after due," in such sense that he acquires no rights which his assignor could not have claimed and enforced.

*Appeal from Taylor District Court.*—HON. J. W. HARVEY, Judge.

FILED, FEBRUARY 13, 1890.

ACTION in equity to recover the amount of certain mortgage bonds. The defendant Dunning filed a cross-petition, in which he demanded relief against his co-defendant, Finn. There was a trial by the court, and a decree rendered in favor of plaintiff against Finn, and in favor of Finn as against Dunning. Both Finn and Dunning appeal.

*Lehman & Park* and *Cummins & Wright*, for appellant Finn.

*Crum & Haddock* and *Phillips & Day*, for appellant Dunning, and for appellee Duncan.

ROBINSON, J.—On the first day of February, 1876, Lewis G. Parker executed and delivered to the Mercantile Trust Company of New York his certain bonds, to the amount of fifteen hundred dollars, payable on the first day of February, 1881. To secure the payment of said bonds, Parker executed and delivered a trust deed which conveyed "the west twenty-two feet of lot number six, in block number fourteen, in the original town of Bedford, Iowa." On the tenth day of February, 1881, the trust company assigned the bonds to Mary W. P. Crane, of Cook county, Illinois, and on the thirtieth day of September, 1884, she assigned them to plaintiff. On the third day of July, 1878, Parker conveyed, by warranty deed, all his interest in said premises to Dunning and two others, and the deed provided that Dunning should assume and pay the aforesaid bonds. On the eighth day of March, 1880, Dunning and his co-grantee conveyed said premises to defendant Finn, by a warranty deed, which provided that it was subject to the deed of trust aforesaid, with interest from February 1, 1880. On or about March 11, 1881, Mary W. P. Crane and defendant Finn entered into an agreement in writing which recited the making of the loan to Parker, and further stated and provided as follows:

"And, whereas, the said Lewis G. Parker and Addie M. Parker have conveyed the said mortgaged premises, and the same are now owned by one G. L. Finn, of Bedford, Iowa, who, in purchasing, has taken said real estate subject to the said loan of fifteen hundred dollars, above referred to, and the same being now due, and said Finn being desirous of having the said loan renewed and extended for the period of five years from and after the first day of February, 1881; and, whereas, one Mary W. P. Crane * * * has purchased the said bonds and mortgage from said Mercantile Trust Company, and is now the absolute owner of the same, a full and complete assignment having been made therein to her: Now, therefore, in consideration of the foregoing premises, and other valuable considerations, the said Mary W. P. Crane hereby agrees to extend the time for the payment of the principal sum of said bonds till February first, 1886, upon the payment of the interest, at the rate of seven per cent. per annum, at the times stated and agreed upon in said bonds, and upon the full and complete performance of and compliance with all the conditions named and recited in said bonds and mortgage above mentioned. And it is hereby expressly agreed that, should any of the conditions of said mortgage, but especially those relating to the payment of interest at the times stated, and to the payment of taxes, and the effecting of insurance upon the property, not be promptly complied with, then this agreement for an extension of time shall be void, and the principal sum named and expressed in said bonds, as well as all the due and overdue interest which may have accrued thereon, shall become due and payable at once, at the election of the said Mary W. P. Crane, and the said Mary W. P. Crane may use any and all the remedies upon the said bonds and mortgage as, by the terms of said instrument, her assignor, the said Mercantile Trust Company, could have used, in like case of forfeiture, while the said Mercantile Trust Company was owner of the same. The intention being to continue this loan for the term of five years, at the rate of

seven per cent. per annum, upon the compliance with the terms of the bonds and mortgage above mentioned; and any condition in said mortgage and bonds as to said debt drawing interest at the rate of ten per cent. after the maturity of the note is expressly waived by said Mary W. P. Crane, and in that regard said bonds are treated as if they never had matured, but had been made for the term of ten years, instead of five. And, in case the bonds are due by reason of the non-compliance with the terms thereof as to the payment of interest, taxes, insurance, etc., the said Mary W. P. Crane may do and have the same remedies as the said Mercantile Trust Company could have done under like circumstances. It is further agreed that in future the interest that falls due on this loan may be paid by said Finn at number 108 Dearborn street, in the city of Chicago. Dated this eighth day of March, 1881.

"MARY W. P. CRANE,
"By RICKEL & EASTMAN, Agents and Attorneys."

"In consideration of the premises above named, I hereby accept the above conditions upon which said extension is granted, and I agree to carry out and execute the provisions of this agreement; and, should I fail or neglect so to do in any respect, I hereby authorize the holder of these bonds and said mortgage to proceed, according to the terms and conditions named, to foreclose and collect the same. Witness my hand at Bedford, Iowa, this eleventh day of March, 1881.

" G. L. FINN."

The transaction between Finn and Dunning was in part an exchange of real estate. Finn owned the property in which Dunning now has a bank, which was valued at five thousand dollars, and he proposed to exchange it for that in controversy, which was valued at four thousand dollars, and for one thousand dollars in addition. It was finally agreed that he should receive for his property that in controversy, subject to the mortgage thereon for fifteen hundred dollars, and in addition the sum of twenty-five hundred dollars; and

the exchange was made, and the money paid, according to that agreement. Dunning claims that, when the trade was made, Finn verbally agreed that if the money secured by the mortgage was paid to him, instead of being used to satisfy the mortgage, he would pay the mortgage when it became due, and that the money was paid to him under that agreement. Dunning asks that the property of Finn be first subjected to the payment of the mortgage debt, and demands judgment against him for the amount he paid him on account of the mortgage, with interest. The plaintiff claims that Finn is liable for the full amount of the mortgage debt, by reason of his alleged agreement with Dunning and his agreement with Mary W. P. Crane. Finn denies the alleged agreement with Dunning, and insists that it was expressly agreed at that time, and when he made the Crane agreement, that he should not be personally liable for any part of the mortgage debt. It appears that, before the decree from which this appeal is taken was rendered, a decree of foreclosure had been rendered, and the premises in controversy sold on the twenty-first of May, 1888, for eight hundred dollars. The district court found that Finn, by his contract of renewal, had become personally liable for the loan in question, and rendered judgment against him for the amount thereof, and of certain taxes paid by plaintiff, deducting therefrom the amount realized from the sheriff's sale of the premises. The cross-petition of Dunning against Finn was dismissed.

I.   Appellant Dunning seeks to recover of Finn the sum of $1,514.32, with interest thereon from March 20, 1880, on the ground that it was paid by him to Finn, at that time, under a verbal agreement that it was to be used in satisfying the mortgage in controversy; that Finn failed to use it for that purpose, and fraudulently concealed that fact from Dunning, who, it is alleged, had no knowledge of Finn's failure to make the payment until foreclosure proceedings were begun in this action. Finn denies these claims, and pleads that Dunning's

1. STATUTE of limitations: recovery of money advanced.

Duncan v. Finn.

alleged right of action is barred by the statute of limitations. We think that plea is sustained by the evidence, so far as it relates to Dunning's alleged right to recover of Finn. More than five years elapsed after the alleged right of action accrued before this action was commenced, and no fraudulent concealment on the part of Finn is shown. Other objections to Dunning's right of recovery need not be noticed.

II. Plaintiff, to sustain his alleged cause of action against Finn, relies in part upon the transaction between Finn and Dunning, and in part upon the Crane agreement for an extension of time of payment. The original agreement between Finn and Dunning was that the mortgage in question should be satisfied before the exchange was made, and that Finn should receive the mortgaged property, and one thousand dollars in addition, for his property. The mortgage debt was not then due, and its owner would not accept payment unless the sum of thirty dollars was paid as an inducement, besides the amount then due. For that or some other reason the original agreement was modified, and Finn was paid the one thousand dollars first contemplated, and also the amount of the mortgage at the date of the exchange of deeds, and the mortgaged property, for his property. Dunning testifies that at that time the question of the mortgage came up, and Finn asked him to pay the money; that he said "he could use it to good advantage, as it only drew seven per cent. interest; and that he would pay the mortgage when it became due,—he could make more than that out of the money;" and that the money was paid under that agreement. Finn explicitly denies that such an agreement was made, and says that he expressly refused to become personally responsible for the debt, and stated, as one of his reasons, that he wished to dispose of the property, and the insurance might not be kept up; that the deed represented the final agreement between the parties. Finn is to some extent corroborated by the deed, which recites that it is subject to the mortgage, but does not make the grantee responsible for it. Since the burden of proving

the agreement in question is upon plaintiff, he has failed as to that, for the preponderance of the evidence is against him. His case is not strengthened by the fact that Dunning, as a prudent business man, should have made the agreement which he now testifies he did make, for the reason that, as a careful and competent man of business, he would have had it reduced to writing, since a part of the agreement was written; and for the further reason that it clearly appears that both parties to the agreement, at the time it was made, believed the mortgaged property to be ample security for the debt. It may be true, as claimed by Finn, that Dunning incurred the risk of the payment of the debt, rather than to pay thirty dollars to have it satisfied. In any event, the claim of Finn that, in the exchange of the property, his was estimated to be worth five thousand dollars, while Dunning's, subject to the mortgage, was worth but twenty-five hundred dollars, and that the twenty-five hundred dollars paid him was for the difference in value, is as well sustained by the evidence as is the claim of Dunning. Therefore, plaintiff must fail as to that issue.

III. The Crane agreement for an extension, coupled with the transaction with Dunning, presents a more difficult question. Conceding that Finn had not been previously liable for the debt, did he not become so by the Crane agreement? His contract with Dunning did not contemplate nor provide for an extension of time for the payment of the debt. Such an extension was in fact obtained, and interest was paid on the debt by Finn for years, until, we may presume from the record, for some undisclosed reason, the mortgaged property ceased to be sufficient security for the debt. There is much force in the claim of appellee that by reason of these facts, and the provisions of the Crane agreement, Finn made the debt his own. However, it is shown, without conflict in the evidence, that the firm of Rickel & Eastman acted as the agents of Mary W. P. Crane in making the contract of extension; that there was much correspondence between that firm and Finn before the agreement

was completed in regard to the personal liability of the latter; that in that correspondence he at all times refused to assume personal liability; that he paid seventy-five dollars to procure the extension, but before it was paid, and after the agreement was signed, he refused to pay it unless assured that he was not to be held personally liable for the debt; and that he received such an assurance in writing from Rickel & Eastman, and thereafter paid the seventy-five dollars. If there is any conflict between the agreement and the writing just referred to, the latter must control. What effect this transaction should have had upon Dunning's liability is a question not presented for our decision, but it certainly had the effect to relieve Finn from obligation to Mary W. P. Crane.

It is said that the correspondence with Rickel & Eastman ought not to be considered, because plaintiff is 3. NEGOTIABLE instruments: innocent purchaser. an innocent purchaser of the bonds in suit. That claim is not supported by the record. The bonds were purchased by plaintiff after they appeared to be due. He claims under a written assignment which purports to sell and transfer all the right, title and interest of Mary W. P. Crane in the bonds in suit, and the mortgage or deed of trust given to secure them. It does refer to Finn, and makes no mention of an extension of the time of payment, but provides that the assignee shall have and enjoy all the rights and privileges given and secured by the bonds as fully as the assignor could have done had the assignment not been made. It does not appear that any representations were made to plaintiff besides those contained in the instruments purchased and the assignment, to induce him to make the purchase. We conclude that plaintiff acquired no right, by virtue of the assignment, which his assignor could not have claimed and enforced. It follows, from what we have said, that the decree of the district court on appeal of Dunning must be affirmed, and that on the appeal of Finn it must be

REVERSED.