MARSHALL INVESTMENT Co., Appellee, v. CORA B. LIND-
LEY, et al., Appellants. Consolidated with one other
case, viz: MARSHALL INVESTMENT Co., Appellee, v.
W. C. ALLEN, J. W. MEADDER, et al., Appellants.

**Equitable liens:** CONTRACTS: SUBSTANCE RATHER THAN FORM. Equity
1 looks to the substance and not to the form of a contract. Thus
where a corporation exchanged land subject to a specified mort-
gage indebtedness, and prior to the conveyance executed mort-
gages on the property to its secretary, which with the previous
mortgage amounted to the indebtedness specified, it is *held* that
the transaction operated in equity as a reservation to the cor-
poration of a lien on the property for that sum, even though
it be conceded that the mortgages created no actionable obliga-
tion between the parties.

**Same:** CONVEYANCE SUBJECT TO MORTGAGE: PRESUMPTION. Where
2 land is sold subject to a mortgage the land becomes the pri-
mary fund for payment of the indebtedness, and the incum-
brance is presumed to have been provided for in adjusting the
consideration.

**Same:** EQUITABLE LIENS: NOTICE. Where a corporation executed
3 mortgages upon its property to itself as mortgagee, and con-
veyed the land subject thereto, the transaction is held to create
an equitable lien, enforceable against subsequent grantees who
acquired the title with notice of the same.

*Appeal from Polk District Court.*—HON. LAWRENCE DE-
GRAFF, Judge.

THURSDAY, MARCH 7, 1912.

ACTION to establish and foreclose liens. Two actions
were brought by the same plaintiff against different defend-
ants. They were so related in their facts that they were
consolidated by agreement and tried together. There was

a decree for the plaintiff in both actions, and the defendants have appealed.—*Affirmed.*

*J. A. Merritt* for appellants.

*George E. Brammer* for appellee.

Evans, J.—These actions were originally brought as actions to foreclose purported mortgages. The plaintiff is a corporation. The alleged mortgages purported to have been executed by the plaintiff itself. They were executed to its own secretary as mortgagee, and the same secretary joined in the execution thereof as an officer of the company. They were executed by the president and secretary as officers of the corporation, but were acknowledged by the secretary alone. These mortgages purported to cover certain real estate then owned by the plaintiff company and which it later conveyed subject to the mortgages. The defendants are the present owners of such real estate.

The defendants appeared and answered the petitions respectively. The substance of each defense was an attack upon each mortgage as being inherently and absolutely void in its inception because of the facts already stated, and praying that the mortgages be decreed to be a nullity. It was also claimed that the mortgages were necessarily merged in the legal title while both were held by the plaintiff, and further that the assignment of the mortgages to the plaintiff corporation by its secretary amounted to a satisfaction and discharge thereof.

Being confronted with this defense, the plaintiff shifted its position and amended its petitions and set up the certain transactions, including a contract, which furnished the occasion and the consideration for the mortgages and the apparent liens which plaintiff seeks to enforce against the real estate. The substance of such amendment was that on August 14, 1909, the plaintiff

entered into a written contract of exchange of property with the Paul Land Company, whereby the plaintiff undertook to convey the property involved in this suit to the Paul Land Company subject to incumbrance of $10,000. The property in question consisted of fifty acres located in or near the city of Des Moines. It consisted of two tracts known in this record as the "twenty-acre" tract and the "thirty-acre" tract. The contract of August 14th bound the plaintiff to convey this property to the Paul Land Company "by good and sufficient warranty deed with the general covenants of warranty, subject to the mortgage of ten thousand ($10,000) drawing interest at the rate of 6 percent per annum payable annually and due in five years, but with the option to the owner of the said land to pay any multiple of one hundred ($100.00) dollars of the said amount on any interest pay day, the said land to be otherwise free and clear of liens and incumbrances."

The contract also provided that the conveyances should be made of the respective properties on August 23, 1909. The mortgages sued on were executed on August 21, 1909. There was an existing valid mortgage of $1,500 at that time on the "thirty-acre" tract. The plaintiff executed another mortgage thereon for $4,500 to its secretary, and a mortgage of $4,000 on the "twenty-acre" tract to the same mortgagee. This made a sum total of $10,000 of incumbrance against the property. The last two named mortgages are those upon which suit was originally brought herein. The purpose of their execution was to conform with the contract entered into with the Paul Land Company on August 14. On August 23, 1909, the property was conveyed by the plaintiff to the Paul Land Company in pursuance of the contract of August 14th, and by an appropriate deed containing the following provision: "subject to mortgages to the amount of ten thousand ($10,000) dollars at 6 percent annual interest due January, 1914, with optional payments also to taxes and interest now due."

The plaintiff contends that, by reason of this contract and its conveyance of the land thereunder, it was and is entitled in equity to a lien upon the property which is the practical equivalent of the mortgages, and that it is entitled to such liens regardless of the validity of the mortgages as such.

1. EQUITABLE LIENS: contracts: substance rather than form.

The evidence in the case is brief and presents practically no conflict. It is undisputed that the plaintiff parted with its title to the said property substantially in the manner above stated. It appears, however, that the name of the Paul Land Company was not inserted in the deed as grantee. At its request no grantee was named in the deed at the time of its delivery by plaintiff, the intent being to permit the Paul Land Company to insert the name of a grantee at its own will. Later the Paul Land Company sold the property to one C. M. Gray and delivered to him the deed in blank which it had received from the plaintiff. Gray's name was later inserted in such deed as grantee. Gray sold the property to the defendant Allen. Allen sold the "thirty-acre" tract to the defendant Cora Lindley, and entered into an executory contract with the defendant Meadder to sell to him ten acres of the "twenty-acre" tract. Thus the legal title of the "thirty-acre" tract now rests in the defendant Cora Lindley, and that of the "twenty-acre" tract in defendant W. C. Allen. The arguments of appellants have been devoted chiefly to show the absolute nullity of the mortgages upon which this action was originally based. It requires no argument to convince us that the acknowledgments of the mortgages and the recording thereof were wholly ineffective to impart constructive notice. It is very clear also that the mortgagee could not have enforced the mortgages against the mortgagor without showing something more than their mere execution in the manner shown. Whether they are necessarily a nullity, however, as to the third persons regardless of notice or other equities, is a somewhat differ-

ent question. If we were to hold that the mortgages were
a nullity as between the original parties thereto in the
sense that they created no suable obligation as between
mortgagor and mortgagee, it would not necessarily be
determinative of this case. For the purpose of this case
only, and without dealing directly with the question, there-
fore, we will treat the mortgages as a nullity in the sense
that in themselves they created no suable obligation as be-
tween the parties thereto.

Turning now to the contract between the plaintiff and
the Paul Land Company and the deed executed by plain-
tiff in pursuance thereof, the effect of these instruments
was clearly in equity a reservation to the plaintiff of an
interest or lien to the amount of $10,000. This was the
intent of the parties to that contract. A court of equity
looks at the substance, and not at the form, and we see
no reason why such provision could not have been en-
forced in a court of equity as between the original parties
to such contract, even though through mistake, inadvertence,
or oversight, no mortgages had in fact been executed.

We have frequently held that, where land is sold
subject to an incumbrance, the land becomes the primary
fund for the payment of such incumbrance. The incum-
brance is presumed to have been provided
for in adjusting the consideration. *Fuller v.
Hunt,* 48 Iowa, 167; *Foy v. Armstrong,* 113
Iowa, 631; *National Bank v. Stone,* 97 Iowa, 185.

2. SAME: convey-
ance subject
to mortgage:
presumption.

In this case, even though the mortgages be deemed
a nullity as suable obligations, they may still be resorted
to as items of evidence tending to throw light upon the
intention of the parties.

It must be said, therefore, that the Paul Land Com-
pany accepted from plaintiff a conveyance of the property,
which, by its terms, made the property the primary fund
for the payment of $10,000 with 6 percent interest payable
on or before January, 1914. If, therefore, this suit had

been brought against the Paul Land Company while it held the land, we think the plaintiff would be entitled to establish its equitable lien and foreclose the same regardless of the validity of the mortgages as such.

If the plaintiff had a valid equitable lien as against the Paul Land Company, it necessarily follows that it has the same lien as against subsequent grantees except so far as they may be entitled to protection as purchasers for value without notice. The Paul Land Company sold to C. M. Gray

3. Same: equitable liens: notice.

and delivered to him the deed which it had received from the plaintiff. Gray's name was inserted in the deed as grantee, and he became a voluntary party to the contract. It is undisputed, therefore, that he had actual notice of the reservations. Gray sold to the defendant Allen; and Allen admits that he read the original deed from plaintiff and was present when Gray's name was inserted as grantee therein. The conveyances from Gray to Allen were also made subject to incumbrances. Allen sold the "thirty-acre" tract to defendant Cora Lindley by a conveyance which in express terms excepted "incumbrance of $6,500, interest and taxes." On February 26, 1910, Allen entered into a written contract with the defendant Meadder for the sale of ten acres. Before this date, the original deed executed by the plaintiff had been duly filed and recorded. The contract with Meadder was wholly executory. The first payment was not to be made for the period of one year. This suit was begun in July of the same year. Meadder testified on the trial that he had conveyed to Allen an equity in other property of the value of $2,100. But he did not disclose when he made such conveyance nor whether he made it before the beginning of this suit or afterwards. Indeed, it is not claimed in behalf of any defendant either in pleading or in evidence that he was a purchaser for value without notice. The theory of the defense is that the plaintiff never had a lien, and that the

question of notice was therefore immaterial. Some evidence has been introduced of the value of the property conveyed by each defendant as a consideration. It is claimed in argument that such consideration was the full value of the property received, but we find no evidence which gives us the slightest intimation of the value of the fifty acres or any part thereof. We are not disposed to encourage the practice of incumbering property beyond its value and then trading in apparent equities which have no value; nor the practice of setting a title afloat by passing a deed in blank from hand to hand. These practices are capable of much abuse and often result in gross frauds. A court of equity will scrutinize them rigorously and will not hesitate to brush them aside to prevent the perpetration of fraud. It is earnestly argued here that this is a case of that kind, and that the defendants have been defrauded through the improper practice of the plaintiff. We are unable to find a syllable of evidence that has the slightest tendency to prove that any fraud has been perpetrated upon anybody. Under the decree of the trial court, the plaintiff receives only what it bargained for originally with the Paul Land Company. Each defendant purchased with notice of the equities. If any defendant has been in any manner deceived or overreached, he has not testified to that effect.

We reach the conclusion that the decree of the trial court must be *affirmed*.