EQUITABLE LIFE INSURANCE COMPANY, Appellee, v. ED JEFFERS et al., Defendants, W. E. WALLACE et al., Appellants.

No. 41539.

FEBRUARY 14, 1933.

A. C. McGill and Clyde W. Savery, for appellee.

Wallace & Claypool, for appellants.

ALBERT, J.—On October 26, 1923, Ed and Howard Jeffers were the owners of the 195 acres of land involved herein. On that date they borrowed from the plaintiff $18,000, which loan was evidenced by a promissory note of even date and due in five years for that amount and a real estate mortgage on the aforesaid land as security therefor. Said mortgage was duly recorded on the 29th day of October following. This mortgage pledged the rents, issues and profits of said property, and provided that, on breach of any of the terms thereof, the mortgagee was entitled to possession, and that, in case of foreclosure, the court "shall have the power and right to appoint a receiver to collect said rents, issues and profits arising from said property during such foreclosure and during the year allowed by law for redemption after judicial sale and apply the net profits, after deducting all costs of such proceedings on the indebtedness secured hereby."

On the 28th day of September, 1928, said mortgage was extended in writing in due form for a term of five years, which extension was duly recorded on October 13, 1928.

On the 26th day of January, 1931, Ed and Howard Jeffers were indebted to and owing the defendant R. G. Popham a sum of money in excess of $4,500, which was evidenced by a mortgage on the above-described land, subject to the mortgage of the plaintiff; and on the above date, Popham and the Jeffers settled said indebtedness by the Jeffers executing a deed to W. E. Wallace. This deed was made to Wallace for the use and benefit of R. G. Popham, and in consideration thereof the indebtedness owed by the Jeffers to Popham was canceled, and on the same date said deed was properly recorded. This deed was a quitclaim deed, and specifically provided that as to the $18,000 mortgage in favor of the Equitable Life Insurance Company "the grantee does not herein assume."

On January 31, 1931, Wallace and Popham joined in leasing said property to Mr. and Mrs. Frank Chittick for a period of one year, commencing March 1, 1931, on a basis of cash rent for the pasture and hay land and one half of all corn and oats raised on said land. This rent was payable January 1, 1932.

Plaintiff's petition for foreclosure was filed on November 19,

1931. The case went to decree of foreclosure on February 3, 1932. In the ordinary course the property was sold, resulting in a deficiency judgment of $1,000. The question of the receivership was then taken up on March 9th, and on March 18th, the court made the following order:

"That the plaintiff is entitled to the appointment of a receiver who shall take charge of said property and collect the rents and profits therefrom from and after the 1st of March, 1932. The plaintiff is not entitled to the rents and profits of the real estate involved in this action for the year 1931 ending on March 1, 1932."

The order further appointed A. H. Mountain receiver to take charge of said real estate and collect the rents and profits from and after the 1st of March, 1932. It further provided:

"And the rents and profits from said real estate, from and after March 1, 1931, and up until March 1, 1932, be and the same are awarded to the defendant W. E. Wallace."

In short, the defendant Wallace was given the rents from March 1, 1931, to March 1, 1932, and the rents from March 1, 1932, to the end of the period of redemption were awarded to the plaintiff.

The only question raised on the appeal is whether or not the part of the order which disposes of the rents from and after March 1, 1932, was a proper order under the facts and circumstances of the case.

To simplify the facts, plaintiff, from and after October 26, 1923, held a first mortgage on this property, with the provisions above referred to. On January 26, 1931, Popham, through Wallace, obtained title to this property by means of the quitclaim deed above referred to. On January 31, 1931, the lease above referred to was made to the Chitticks, by Wallace for Popham, for one year, commencing March 1, 1931. So far as the record shows, therefore, from and after the last-named date, Wallace (for the use of Popham) was the holder of a fee title to this property as against all the world except the plaintiff's mortgage, which was not assumed by Popham or Wallace, subject to said lease; and this was the status of this matter on November 19, 1931, when plaintiff filed its foreclosure case and asked for a receiver. The plaintiff does not appeal from that part of the order which gave Wallace the rents, profits, etc., up to March 1, 1932; so all we have before us is the question

of the rents and profits from March 1, 1932, to the expiration of the period of redemption.

Just what was the relation between the plaintiff and Wallace after the deed was made by the mortgagor to Wallace? Wallace took the title subject to the outstanding mortgage of the plaintiff. Would this deed place Wallace in a more advantageous position, as against the plaintiff's mortgage, than that occupied by his grantor? Aside from the personal liability on the note and mortgage, Wallace stepped into the shoes of the Jeffers, and thenceforth the relation between the plaintiff and Wallace was identically the same as the former relation between the plaintiff and the Jeffers. The Jeffers could in no way defeat the provisions of plaintiff's mortgage, nor can Wallace, standing in Jeffers' shoes, defeat the same. We know of no principle of law or equity which, under these circumstances, would place Wallace in any superior position, as against this mortgage, than that which was occupied by his grantor. He took this title subject to all of the provisions of the outstanding mortgage, and aside from liability for the debt, the mortgagee's rights, as against Wallace, are identically the same as his rights were against the Jeffers; and as against the Jeffers, the mortgagee was entitled to the sequestration of the rents, income, and profits, and hence the mortgagee had the same rights against Wallace, and when the plaintiff in this case made the proper showing for a receiver, the court should have granted the receivership.

The defendants-appellants insist that they, and not the plaintiff, are entitled to said disputed rents, income, and profits, and base this contention on the prior decisions of this court.

We have recognized the rule that the plaintiff, under a mortgage of this kind, does not acquire a lien on the rents, income, and profits until he starts foreclosure and prays for a receiver. Among our cases see Hakes v. North, 199 Iowa 995; Lynch v. Donahoe, 205 Iowa 537.

It will be noticed on a careful reading of our cases, however, that this rule has been laid down in cases in which the holder of the title made a lease and assigned the same to third parties and the contention was between the mortgagee and the assignee.

It will be further noted that the owner of the property had segregated the rents, income, and profits and passed them to a third party before the lien of the first mortgage attached. In the case at bar, the rents, income, and profits are still in the hands of the owner

of the property, and have not passed therefrom. The fact situation, therefore, in the case at bar is not controlled by our former cases, in spite of the fact that the appellants argue that the quitclaim deed to Wallace operated as an assignment of the rents, income, and profits. By the making of this deed to Wallace, the full title to the property passed, and he became the owner thereof. Were we to hold otherwise, the provisions in the mortgage for the pledging of the rents, income, and profits and the appointment of a receiver would, in every case, be nullified by a transfer of title to the property. We have not so held in any case, and we are not cited to any authority so holding in any of our sister states.

The appellants also rely upon Young v. Stewart, 201 Iowa 301; Hakes v. North, 199 Iowa 995; Keokuk Tr. Co. v. Campbell, 205 Iowa 414; Lynch v. Donahoe, 205 Iowa 537; John Hancock Mut. Ins. Co. v. Linnan, 205 Iowa 176; Des Moines Joint Stock Land Bank v. Danson, 206 Iowa 897. None of these cases, however, have a fact situation similar to the one we have in the case at bar.

It is our conclusion, therefore, that the court was right in its decision of this matter, and the rents, income, and profits from this property for the year commencing March 1, 1932, to the expiration of the redemption period should go to the plaintiff, and it was, therefore, entitled to a receiver for the same.—Affirmed.

All the Justices concur.