DES MOINES JOINT STOCK LAND BANK, Appellant, v. J. H. ALLEN et al., Appellees.

No. 42248.

July 17, 1935.

Rehearing Denied October 17, 1935.

Kelly, Shuttleworth & McManus, and Kelly & Kelly, for appellant.

F. C. Gilchrist, Jr., and James W. Fay, for appellees.

Kintzinger, C. J.—In 1919, the defendants J. H. Allen and wife executed an amortization note and mortgage in the sum of $24,000 to the Central Iowa Joint Stock Land Bank of Des Moines, which the latter assigned to plaintiff in 1924. In May,

1922, Mr. Allen, being greatly indebted to the First Trust & Savings Bank and the First National Bank, of Fort Dodge, Iowa, conveyed the land in question to them, as security for such indebtedness. At that time Mr. Allen was indebted to both banks in an amount greatly exceeding his equity in the land, and his deed to them was in effect a mortgage. This deed was made subject to the plaintiff's $24,000 mortgage, but contained no clause assuming the mortgage therein. Appellee banks occupied the same building, and were in most respects officered by the same men. The real estate comprises 240 acres of land in Palo Alto county, Iowa, and belonged to the defendant J. H. Allen. His wife, Grace G. Allen, had only an inchoate dower interest therein.

In 1926, Mr. Allen attempted to secure an extension of the note and mortgage, and a reduction in the rate of interest thereon. Papers to that effect were forwarded to him by plaintiff for that purpose, and were signed by the officers of the banks at Allen's request and on his behalf, in September, 1926, while he was still the owner of the land. No resolution was ever adopted by the board of directors of either bank authorizing an assumption of the mortgage or an extension thereof.

In November, 1928, the indebtedness of the defendant Allen to the appellee banks amounted to $45,656.86. The evidence shows that in order to effect a reduction of this indebtedness, Allen, in November, 1928, gave a quitclaim deed of all his interest in the 240 acres in question, and an additional 120 acres in Minnesota, to the First National Bank, for both banks. This deed contains no agreement to assume the obligation of plaintiff's mortgage.

Appellant contends that the appellee banks assumed the obligation of plaintiff's mortgage, by an oral agreement entered into between Mr. Allen and said banks, and also by reason of an implied agreeement resulting from the fixing of an estimated value of $165 an acre on the land, and deducting therefrom the amount of plaintiff's mortgage, and by the extension agreement executed in 1926.

Although there is an apparent conflict in the testimony with reference to whether or not the officers of appellee banks assumed plaintiff's mortgage, it is our finding that there was no evidence of any written or oral agreement to that effect.

There was also a mortgage existing against the Minnesota

land, but no question in relation thereto is raised herein, as the Minnesota land, and the indebtedness thereon, were only considered for the purpose of arriving at the amount of credits to be given Allen on his indebtedness to appellee banks.

In arriving at the amount of such credits, it was necessary to, and Mr. Allen and the banks did, fix an estimated value of $165 per acre upon all the land transferred, making its total estimated value $59,400. An existing mortgage indebtedness thereon of $32,677.76 was deducted from this total value to determine Allen's equity in said lands. His equity in both tracts was, therefore, found to be $26,722.24. $21,677.76 of the total mortgage debt was represented by plaintiff's mortgage.

Allen's total indebtedness to appellee banks was $45,656.86, upon which he was credited on the books of the banks with his equity of $26,722.24, and his obligations to that extent were returned to him, marked canceled. After deducting Allen's entire equity from his total indebtedness, he still owed appellee banks $18,934.62.

The estimated value of the 240 acres of Palo Alto county land was $39,600. Against this was plaintiff's mortgage of $21,677.76. Deducting this amount from the estimated value of the Iowa land left Mr. Allen's equity in the Iowa land $17,-922.24. After crediting him with this amount on his obligations, together with the additional amount credited him on the Minnesota land, he still owed both banks $18,934.62. The evidence, therefore, shows without dispute that Mr. Allen's indebtedness to appellee banks greatly exceeded any equity he had in all the lands conveyed.

In order to determine his equity in the land, and to enable the banks to credit him with a fixed (or certain) amount on his indebtedness, he executed the quitclaim deed to the banks at the estimated value referred to. This deed simply conveyed *all of his interest in the land*. No written or oral agreement to assume plaintiff's mortgage was made by the defendant banks.

Plaintiff seeks judgment against appellee banks upon the theory of both an oral and implied agreement to assume payment of its mortgage. Plaintiff also asks for personal judgment against the defendant Mr. Allen, and also asks for the appointment of a receiver to collect the rents and profits during the period of redemption. The court entered a decree of foreclosure in favor of plaintiff, but denied personal judgment

against the defendant banks and Mrs. Allen, and also refused the appointment of a receiver. From this action of the lower court, plaintiff appeals.

I. Appellant contends that the court erred in failing to enter judgment against appellee banks because, (1) they orally promised and agreed through their officers to assume plaintiff's mortgage, or (2) because an implied agreement to that effect resulted from the nature of the transactions between Allen and the banks, under which the land conveyed was estimated at a fixed value of $165 an acre, from which the amount of plaintiff's mortgage was deducted.

■■■ It is the well-settled rule of law that where property is conveyed subject to an existing mortgage, the grantee is not liable for the payment of such mortgage, unless it appears from the evidence that he agreed to assume it. 41 C. J. 717; 19 R. C. L. 372, section 142; 19 R. C. L. 380, section 151; Johnson v. Monell, 13 Iowa 300; Aufricht v. Northrup, 20 Iowa 61; Hull & Co. v. Alexander, 26 Iowa 569; Fuller & Co. v. Hunt et al., 48 Iowa 163; Lewis v. Day, 53 Iowa 575, 5 N. W. 753; Ritchie v. McDuffie, 62 Iowa 46, 17 N. W. 167; Duncan v. Finn, 79 Iowa 658, 44 N. W. 888; Bristol Sav. Bank v. Stiger, 86 Iowa 344, 53 N. W. 265; Seiffert & Wiese Lumber Co. v. Hartwell, 94 Iowa 576, 63 N. W. 333, 58 Am. St. Rep. 413; Moore v. Olive, 114 Iowa 650, 87 N. W. 720; Fitzgerald v. Flanagan, 155 Iowa 217, 135 N. W. 738, Ann. Cas. 1914C, 1104; Halvorson v. Mullin, 179 Iowa 293, 156 N. W. 289, 161 N. W. 309; Dimmitt v. Johnson, 199 Iowa 966, 203 N. W. 261; Herbold v. Sheley, 209 Iowa 384, 224 N. W. 781; Fiske v. Tolman, 124 Mass. 254, 26 Am. Rep. 659; Heidahl v. Geiser Mfg. Co., 112 Minn. 319, 127 N. W. 1050, 140 Am. St. Rep. 493; Belmont v. Coman, 22 N. Y. 438, 78 Am. Dec. 213; Robinson Bank v. Miller, 153 Ill. 244, 38 N. E. 1078, 27 L. R. A. 449, 46 Am. St. Rep. 883; Shepherd v. May, 115 U. S. 505, 6 S. Ct. 119, 29 L. Ed. 456; Farmers Loan & Trust Co. v. Penn Plate Glass Co., 186 U. S. 434, 22 S. Ct. 842, 46 L. Ed. 1234; Capitol Nat. Bank v. Holmes, 43 Colo. 154, 95 P. 314, 16 L. R. A. (N. S.) 470, 127 Am. St. Rep. 108.

"The grantee of mortgaged land does not incur a personal liability for the payment of a mortgage debt, enforceable by the mortgagee, merely because the deed recites that it is made subject to the mortgage; nor because of his agreement to pur-

chase subject to the mortgage. Personal liability on the part of the grantee is created only by his distinct assumption of the debt or contractual obligation to pay it." 41 C. J. 717, section 757.

"While * * * a mortgagor remains personally chargeable for the obligation secured, a grantee of the land which is subject to a mortgage assumes no personal liability for the obligation secured, * * * where he has not by express agreement undertaken the payment thereof. He is liable neither legally nor equitably to indemnify his grantor against the mortgage. * * * Mere payment of interest by the grantee does not in itself impose on him personal liability for the mortgage debt. Nor is the rule * * * altered by the circumstance that the owner conveys subject to a mortgage, and deducts the amount thereof from the consideration." 19 R. C. L. 372, section 142 (notes 7-10).

In Aufricht v. Northrup, 20 Iowa 61, loc. cit. 62, this court said:

"The sale and conveyance of the tract of land, with covenants of general warranty, subject, however, to a prior mortgage, does not of itself, and without further showing, amount, in law, to a promise by the grantee to pay off such incumbrance and discharge the mortgage debt. Johnson v. Monell, 13 Iowa 300."

In Hull & Co. v. Alexander, 26 Iowa 569, loc. cit. 572, this court said:

"The purchase of property subject to a mortgage is one thing; while the purchase of property assuming to pay the mortgage then upon it, is quite another. In the former, the purchaser may pay the mortgage debt *or suffer the property to be sold for its payment.* In the latter, he must pay the mortgage debt; and though he suffer the property to be sold under a foreclosure, if it fails to sell for enough to pay the mortgage debt, he must supply the deficit."

In Lewis v. Day, 53 Iowa 575, loc. cit. 579, 5 N. W. 753, 756, this court said:

"It has been held by this court that the 'sale and conveyance of land with covenants of warranty, subject, however, to a prior mortgage, does not, of itself and without a further show-

ing amount in law to a promise to pay off such encumbrance and discharge the mortgage debt.' '' Citing cases.

In Bristol Savings Bank v. Stiger, 86 Iowa 344, loc. cit. 349, 53 N. W. 265, 266, this court quotes with approval from the case of Fiske v. Tolman, 124 Mass. 254, 26 Am. Rep. 659, as follows:

"In Fiske v. Tolman, 124 Mass. 254 [26 Am. Rep. 659], the language of the deed was: 'Subject, however, to a mortgage held by the Lowell Five Cent Savings Bank of $7,000.00, which is a part of the above-named consideration.' The court says: 'A promise to pay the mortgage debt cannot be inferred from the acceptance of the deed, on the ground that the clause contains this reference to the consideration. Taken by themselves, the words do not necessarily imply any obligation to be performed by the grantee. They are to be considered rather as additional words of recital or description, showing that the whole amount of the consideration was not paid or intended to be paid, but that the grantee had purchased only an equity of redemption.' ''

In that case this court also quotes with approval the following language from Belmont v. Coman, 22 N. Y. 438, 78 Am. Dec. 213:

"The cases all agree that the purchaser of a mere equity of redemption, without any words in the grant importing that he assumes the payment of the mortgage, does not bind himself personally to pay the debt. * * * They declare that the amount of the mortgages has been deducted from the consideration which had been previously set forth. The apparent meaning of this is that so much of the purchase money as the mortgages amount to, being deducted, *is not to be paid, except as it is charged upon the premises.''* (Italics ours.)

There is an apparent conflict in the cases respecting the liability of a grantee in a deed conveying property "subject to a prior mortgage". Some cases hold that where real estate is sold subject to a prior mortgage for a certain fixed consideration as the purchase price, and the amount of the mortgage is deducted therefrom, that an implied agreement arises on the part of the grantee to pay or assume the same. Wood v. Smith,

51 Iowa 156, 50 N. W. 581; Northwestern Nat. Bank v. Stone, 97 Iowa 183, 66 N. W. 91; Foy v. Armstrong, 113 Iowa 629, 85 N. W. 753; Marshall Inv. Co. v. Lindley, 156 Iowa 6, 134 N. W. 853; Lamka v. Donnelly, 163 Iowa 255, 143 N. W. 869; Hawn v. Malone, 188 Iowa 439, 176 N. W. 393; Thompson v. Thompson, 4 Ohio St. 333; Appeal of May's Estate, 218 Pa. 64, 67 A. 120; Braman v. Dowse, 12 Cush. (Mass.) 227; Smith v. Truslow, 84 N. Y. 660; Siegel v. Borland, 191 Ill. 107, 60 N. E. 863; Heid v. Vreeland, 30 N. J. Eq. 591; 2 Jones on Mortgages (7th Ed.) section 749.

Another line of cases holds that in an exchange of equities in property, in the absence of any evidence that a part of the consideration is withheld by either to cover the amount of a mortgage, neither grantee is liable for the mortgage debt, although the relative values of the lands and the amounts of the encumbrances thereon were estimated in making the deal.

We think the true rule is that where a grantee takes a conveyance of property subject to a mortgage which is treated as part of the purchase money, the property becomes bound for the payment of the mortgage, but the purchaser is not personally liable for the mortgage debt, unless he specifically agrees to assume the debt. Lewis v. Day, 53 Iowa 575, 5 N. W. 753; Myers v. Bowers, 70 Iowa 95, 30 N. W. 24; Bristol Sav. Bank v. Stiger, 86 Iowa 344, 53 N. W. 265; Seiffert & Wiese Lumber Co. v. Hartwell, 94 Iowa 576, 63 N. W. 333, 58 Am. St. Rep. 413; Moore v. Olive, 114 Iowa 650, 87 N. W. 720; Halvorson v. Mullin, 179 Iowa 293, 156 N. W. 289, 161 N. W. 309; Dimmitt v. Johnson, 199 Iowa 966, 203 N. W. 261; Herbold v. Sheley, 209 Iowa 384, 224 N. W. 781; Belmont v. Coman, 22 N. Y. 438, 78 Am. Dec. 213; Equitable Life Assurance v. Bostwick, 100 N. Y. 628, 3 N. E. 296; Granger v. Roll, 6 S. D. 611, 62 N. W. 970; Interstate Land & Investment Co. v. Logan, 196 Ala. 196, 72 So. 36; Green v. Hall, 45 Neb. 89, 63 N. W. 119.

This court has also held that a party buying real estate subject to a mortgage, without assuming the payment thereof, does not, by securing an extension of time on the mortgage, render himself personally liable where he has at all times disclaimed personal liability. Duncan v. Finn, 79 Iowa 658, 44 N. W. 888; Bristol Sav. Bank v. Stiger, 86 Iowa 344, 53 N. W. 265; Price v. Rea, 92 Iowa 12, 60 N. W. 208.

Appellant strenuously contends that because a sum certain

was fixed as the value of the land, and because the amount of plaintiff's mortgage was deducted therefrom, that an implied agreement was created under which appellee banks assumed plaintiff's mortgage. It is true that in arriving at the amount of credits to be given Mr. Allen on his indebtedness to the banks, the value of the land was estimated at $165 an acre. Allen, however, was indebted to the banks in a greater amount than the difference between this estimated value and plaintiff's mortgage. It was, therefore, necessary to deduct the amount of the mortgage from some estimated value on the land. This was done for the purpose of giving Mr. Allen credit for the difference. After giving him such credit, he was still greatly indebted to the banks.

Under the quitclaim deed, he simply conveyed *his interest in the land.* Under the conditions then existing, the effect of this deed was a transfer of his equity in the land to the banks, but leaving the land primarily liable for the mortgage indebtedness thereon. By the term "equity" is meant "the remaining interest belonging to one who has pledged or mortgaged his property, or the surplus of value which may remain after the property has been disposed of for the satisfaction of liens". Halvorson v. Mullin, 179 Iowa 293, loc. cit. 299, 156 N. W. 289, 290, 161 N. W. 309. An "equity" is defined by Webster's International Dictionary as "the amount or value of a property * * * above the total liens or charges". The effect of the transaction was an exchange of his equity for a reduction of a certain amount of his indebtedness to the bank. Halvorson v. Mullin, 179 Iowa 293, 156 N. W. 289, 161 N. W. 309.

There was apparently no other method of determining the grantor's equity in the property, and it seems clear that the only purpose of fixing a certain amount as the estimated value of the land was to enable the grantor to receive credit for a certain amount of his indebtedness to the banks. That such was the purpose is borne out by the wording of the quitclaim deed in which *the grantor transfers all his right, title, and interest in the land in question,* and such interest could have been only the margin above the liens thereon.

At the time the extension agreement was entered into, the appellee banks already had a mortgage deed securing Allen's indebtedness to the banks. The quitclaim deed was given two years later for the purpose of effecting a partial settlement of Allen's

indebtedness to the banks. As the banks already had this mortgage at the time the quitclaim deed was given, there was no apparent reason for any agreement on their part to assume plaintiff's mortgage. It is clear from all of the evidence that there was no intent on their part to assume this mortgage.

The true rule seems to be that such an interpretation should be placed upon the transaction as to carry into effect the intention of the parties, where the interest conveyed is merely an equity, and the purchase price agreed upon represents simply the value of the grantor's interest in the mortgaged property over the mortgage debt. In such event, the property is primarily liable for the payment thereof. In order to imply a promise, there must have been an intent on the part of the banks to assume plaintiff's mortgage. In the absence of such an intent, there can be no implied promise. Fitzgerald v. Flanagan, 155 Iowa 217, 135 N. W. 738, Ann. Cas. 1914C 1104; Dimmitt v. Johnson, 199 Iowa 966, loc. cit. 969, 203 N. W. 261; Hawn v. Malone, 188 Iowa 439, loc. cit. 443, 176 N. W. 393.

In Dimmitt v. Johnson, 199 Iowa 966, loc. cit. 969, 203 N. W. 261, 263, we said:

"There is considerable difficulty, however, in implying a promise *when the facts on which the implication is based are in dispute.* [Italics ours.] In the abstract, the appointment to pay a given sum for property upon which there is a mortgage, and the retention of a sufficient amount of that given sum for the purpose of discharging that mortgage would, if conclusively shown, raise an implied promise between the parties for the benefit of the mortgagee. The fundamental element in both cases is the intent of the parties. The retention of part of the purchase price is merely evidence tending to prove the intent, but there is no difference in the obligation that arises by a purchaser expressly assuming and promising to pay a mortgage and the implied agreement that he shall pay, except in the one case the promise is expressed and in the other it is implied. The mere retention of the money alone is not conclusive proof from which the intent could be implied. *It must, in addition, be retained for the purpose of paying the mortgage.* [Italics ours.] How can any one say what the purpose of the retention is unless at the time it was retained there was an agreement between the parties as to that purpose?"

In Hawn v. Malone, 188 Iowa 439, loc. cit. 443, 176 N. W. 393, 394, we said:

"If, however, the transaction involves the mere exchange of equities in respective tracts of land, and values are considered only, if at all, for the purpose of adjusting differences, no such implication will arise."

It is clear that the only purpose of the parties in fixing an estimated value of the land was to adjust differences in the amount of the grantor's debts to appellee banks. The testimony on the part of appellee banks clearly shows there was no agreement by them to assume the obligation of plaintiff's mortgage. This conclusion is corroborated by the banks' records showing that no such obligation was listed among the banks' liabilities.

We are constrained to hold that plaintiff has failed to establish by a preponderance of the evidence that any assumption agreement was entered into by appellee banks. It is, therefore, our conclusion that the lower court committed no error in refusing to enter personal judgment against the banks. Other reasons are urged by appellees in support of the lower court's conclusion on this branch of the case, but for the reasons above given, a consideration of them is unnecessary.

II. Appellant also contends that the court erred in refusing to appoint a receiver. It is the well-settled rule of law in this state that a receiver will not be appointed in a foreclosure proceeding, in the absence of a showing of equitable grounds therefor. Walters v. Graham, 190 Iowa 481, 180 N. W. 305; Durband v. Ney, 196 Iowa 574, 191 N. W. 385; Sheakley v. Mechler, 199 Iowa 1390, 203 N. W. 929.

It is likewise the rule that a receiver *will* be appointed (the mortgage so providing) where such a showing is made, because the mortgagee has a lien on such rents and profits against the mortgagor *or his assignee,* and because the latter stands in the shoes of the mortgagor. Northwestern Mut. Life Ins. Co. v. Gross, 215 Iowa 963, 247 N. W. 286; Equitable Life Ins. Co. v. Jeffers, 215 Iowa 696, 246 N. W. 784; Conn. General Life Ins. Co. v. Stahle, 215 Iowa 1188, 247 N. W. 648; Prudential Ins. Co. v. Puckett, 216 Iowa 406, 249 N. W. 142; First Trust Joint Stock Land Bank v. Jansen, 217 Iowa 439, 251 N. W. 711. The former rule announced in Schlesselman v. Martin, 207 Iowa 907, 223 N. W. 762, no longer applies.

Evidence on the part of the plaintiff tended to show that the value of property in question was only $45 an acre. Evidence on the part of defendant tends to show that the value of the land in question was $100 per acre without improvements, and that the forty with the improvements was worth $140 an acre.

The judgment entered against the defendant Allen, was $24,800. If the land in question was not worth more than $100 an acre it would not be sufficient security for the balance due on the judgment. It is our conclusion from the testimony of values offered that the total value of the land at that time was not over $100 an acre. It necessarily follows that plaintiff was entitled to the appointment of a receiver for the collection of rents and profits during the period of redemption.

 This period has long since expired, but as the rents and profits have been collected by the appellee banks, they should be required to account therefor; the proceeds to be applied toward the payment of plaintiff's deficiency judgment, if any. The court, therefore, erred in failing to appoint a receiver, and the case will be remanded for an accounting.

 III. Appellant also claims that the court erred in failing to enter a judgment against Grace G. Allen, wife of the principal defendant. The real estate covered by the mortgage was owned by her husband, and she had only an inchoate dower interest therein.

1. In her answer she attempts to plead that she received no consideration for her signature to the note, and that she signed the mortgage for the sole purpose of releasing and waiving her dower interest in the land. Plaintiff moved to strike these allegations as being conclusions of law. The lower court overruled the motion upon the ground that other allegations in her answer were sufficient to make the pleading good.

The evidence upon this issue fairly showed that Mrs. Allen knew that she was signing a note and mortgage, that her signature to the note was not inadvertently made, but was, in fact, signed for the purpose of enabling her husband to secure the loan. Her husband was a lawyer and a banker of many years' experience and well knew that if his wife was only signing the mortgage for the purpose of releasing her dower interest therein, it would not have been necessary for her to sign the note. On this subject she testified as follows: ''I knew that I was

signing a note and mortgage to make a farm loan. According to my best judgment, I knew it was necessary for me to sign that note in order to complete the loan. * * * I knew that I was signing the note as well as the mortgage.''

No fraud, inadvertence, mistake, or undue influence was pleaded. The note being a written instrument imports a consideration. The burden of establishing the defense of no consideration is upon the defendant. Such a defense is based upon the theory of the rule announced in Hinman v. Treinen, 196 Iowa 701, 195 N. W. 345 ; LaFleur v. Caldwell, 196 Iowa 727, 195 N. W. 234 ; Insell v. McDaniels, 201 Iowa 533, 207 N. W. 533 ; and other cases. Assuming but not deciding that this defense was properly pleaded, it is, nevertheless, our conclusion that it has not been established by the evidence.

It is therefore unnecessary to consider the court's action in overruling the motion to strike.

■■■ 2. Appellant also contends that the court erred in not entering personal judgment against Mrs. Allen, who contends that she is not liable because of a novation of contract resulting from the extension agreement entered into. This agreement, however, contains the following provision:

''It is expressly agreed * * * that this agreement shall in no manner change or alter the provisions of the note and mortgage aforesaid in any other manner than herein expressed, and that all covenants and provisions in said note and mortgage shall remain in full force and effect.''

The only change in the note and mortgage was an extension of the time of payments and a reduction in the rate of interest. Otherwise the parties remain bound by the terms of the note. In order to constitute the novation of a contract, all of the parties must agree thereto, and the original debt must be extinguished. The evidence in this case clearly shows that the defendant Mrs. Allen never consented thereto, had no knowledge of it, and the original debt was *expressly not* extinguished. She, therefore, remains liable thereon.

Under such circumstances, a party still remains liable on the original indebtedness. Hannan v. Murphy, 198 Iowa 827, 200 N. W. 418 ; Blank v. Michael, 208 Iowa 402, 226 N. W. 12 ; Royal Union Life Ins. Co. v. Wagner, 209 Iowa 94, 227 N. W. 599 ; Iowa Title & Loan Co. v. Clark Bros., 209 Iowa 169, 224 N. W.

774; Herbold v. Sheley, 209 Iowa 384, 224 N. W. 781; Hakes v. Franke, 210 Iowa 1169, 231 N. W. 1.

The facts in the case of Hakes v. Franke, 210 Iowa 1169, 231 N. W. 1, 5, are in effect similar to the facts in this case. In that case we said:

"The obligation of Senneff and Shepard was not changed or modified by the extension agreement. There was no novation. See Royal Union Life Ins. Co. v. Wagner, 209 Iowa 94, 227 N. W. 599; Blank v. Michael, 208 Iowa 402, 226 N. W. 12, 13. The essentials of a novation are: (1) A previous, valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; (4) the validity of the new one. See Royal Union Life Ins. Co. v. Wagner, 209 Iowa 94, 227 N. W. 599. * * * By the execution of the extension agreement, duly signed by Senneff and Shepard, there was no extinguishment of the debt or of the old contract; there was no substitution of the extension agreement for the prior agreements of Senneff and Shepard to pay."

In Blank v. Michael, 208 Iowa 402, loc. cit. 403, 226 N. W. 12, 13, we said:

"The mortgagors further urge that the extension agreement operated as a novation. The mortgagors were not parties to the extension agreement. As there was no express agreement to extinguish their obligation and substitute a new one, or to release them, and as in this jurisdiction such an agreement is not implied, there was no novation."

The essential elements constituting a novation are lacking in this case. Mrs. Allen was not a party to the extension agreement, the note was not extinguished, and she was not released therefrom.

We are constrained to hold that there was no novation of the contract in this case, and that the original parties all remained liable on the note. We think this case is controlled by the case of Hakes v. Franke, 210 Iowa 1169, 231 N. W. 1, in which the reasons for the rule are so fully considered that we deem it unnecessary to extend this opinion further.

For the reasons herein expressed, we are constrained to hold that the lower court erred in failing to enter judgment against the defendant Mrs. Allen.

462

For the reasons hereinabove expressed, the judgment of the lower court is affirmed in all respects, except as to its ruling in failing to appoint a receiver, and in failing to enter personal judgment against the defendant Grace G. Allen.

The case is therefore affirmed in part, reversed in part, and remanded for a decree in harmony herewith.

Affirmed in part; reversed in part.

All Justices concur, except MITCHELL, J., who took no part.